# West *versus* Pennsylvania Company for Insurance on Lives, &c.

1. A corporation held property in trust for persons "*unknown for seven years.*"  In order to escheat the property, the Commonwealth must provide means to come in under the trust deed in room of the cestui que trust.

2. The Act of September 29th 1787 (Escheat) has not furnished a remedy.

3. Under the Act of 1787, the questions are, whether the intestate died possessed of property without known heirs or kindred, and who has possession of it?

[West *v.* Pennsylvania Co. for Insurance on Lives, &c.]

4. These facts being found and certified, the Commonwealth can seize the property, unless the person in possession give bond to traverse.

5. The Commonwealth has then a primâ facie title and the person in possession must become the contestant.

6. A trustee is lawfully possessed, and no process can displace him, until he has had a day in court and the beneficial interest established against him.

7. The trustee must account to the true owner, who is no party to the proceeding under the Act of 1787 and not bound by the finding.

8. The questions of title under the trust can be determined only by the Court of Common Pleas, which has jurisdiction of the trustee's accounts.

9. The Act of April 17th 1869 (Escheats) is incapable of being carried into execution.

10. Commonwealth *v.* The North American Land·Co., 7 P. F. Smith 102, distinguished. West's Appeal, antea, p. 186, approved.

January 3d 1871. Before THOMPSON, C. J., READ, AGNEW and WILLIAMS, JJ. SHARSWOOD, J., at Nisi Prius.

Appeal from the decree of the Supreme Court at Nisi Prius: In Equity: No. 64, to January Term 1870.

The bill in this case was filed March 30th 1870, by The Pennsylvania Company for Insurance on Lives, &c., against George S. West and R. W. Jones. On the same day a special injunction was granted.

The bill alleged that upon an information by R. W. Jones the auditor-general issued a commission to George S. West, as deputy escheator, in the matter of an alleged escheat of property known as the "381 Trust" and the "Aggregate Fund Trust;" that the property said to be escheated had known owners. The bill further alleged that by deed of September 30th 1796, James Greenleaf conveyed to George Simpson certain property in trust for holders of notes and acceptances specified in the deed; this trust is known as the "381 Trust;" the plaintiffs are now the trustees thereof; the moneys of this trust came into their hands in December 1862, an account thereof was filed, an auditor awarded the fund to certain cestuis que trust and his report is still pending in the Court of Common Pleas of Philadelphia on exceptions. The bill further alleged that by a series of deeds, dated in 1797, said Greenleaf conveyed property to Henry Pratt and others in trust for the holders of certain notes and acceptances therein specified. This is known as the "Aggregate Fund Trust;" the plaintiffs were now the trustees thereof but had received no funds; their predecessor in the trust had filed an account of the fund which had been distributed by auditors whose reports had been confirmed; that the two funds were intimately connected, and proceedings had been begun by West, as deputy escheator, for the escheat of the property in the possession of the plaintiffs as trustees of these funds, under the Act of April 17th 1869, as the property of owners who had been unknown for seven years.

The prayers were:—

1. That it may be declared that no such proceeding can be had

[West *v.* Pennsylvania Co. for Insurance on Lives.]

under the said Act of April 17th 1869; that it omits wholly to provide for its due enforcement, and cannot be carried into effect.

2. That the defendants may be enjoined from continuing any further said alleged proceedings under said Act.

3. For general relief.

The injunction was as follows:—　*　*　*

"We do strictly enjoin and command you, the said R. Whittendale Jones and George S. West, your servants and agents and all and every of you, that you do from henceforth altogether absolutely desist from further prosecution of the said proceedings until our said court shall otherwise make order to the contrary."

The defendants filed separate answers, April 22d 1870. West answered that under his commission as deputy escheator, two inquests were constituted, who held numerous meetings, at which the plaintiffs were represented by counsel; that the cases had been closed and nothing remained to be done but for the escheator to charge the juries and for them to find their verdicts. Jones answered that the two funds were entirely separate and distinct; he set out the mode of their creation; that in November 1862 the Supreme Court awarded to the trustees of "381 Trust" 6119 shares in the North American Land Company subject to the trusts; on these shares $100,000 of dividends have been received and are in the possession of the plaintiffs; that the cestuis que trust are the holders of certain notes and acceptances; that $44,000 of the fund has known owners as holders of notes and acceptances secured by the "381" deed and are part of the "Aggregate Fund" held by complainants; that the account mentioned in the bill was only the first of the dividends, and the $44,000 was awarded to the holders of the notes and acceptances and that part of this sum belongs to unpaid certificate holders of the "Aggregate Fund" who have been unknown for seven years; that the remainder of the fund belongs to holders of notes and acceptances ‘(specified in the answer); that it is wholly unpaid and the owners have been unknown for seven years, and both funds are therefore escheated; that the possession of these funds by the plaintiffs was proved before the inquest and none of the cestuis que trust appeared to claim them.

On the 30th of April 1870, the court (Read J.) made the injunction perpetual.

West appealed to the court in banc, and assigned for error:—

1. Granting the injunction.

3. Entertaining the bill.

4. In making the injunction perpetual.

The Acts of Assembly under which the proceedings to escheat were had, are stated in the case immediately preceding (West's Appeal, antea, p. 186).

*J. W. M. Newlin* and *F. C. Brewster*, Attorney-General, for

appellants, and *W. M. Tilghman* and *E. S. Miller*, for appellees,
submitted the case on their respective paper-books.

The opinion of the court was delivered, January 14th 1871, by
Agnew, J.—In West's Appeal, antea, p. 186, we held that the
Act of April 17th 1869, relating to escheats, though a supplement
to the Act of September 29th 1787, was without adequate
means of enforcement in relation to *trusts*, the proceeding under
the Act of 1787 being inapt, and not capable of being applied
to trusts.

That is said in the printed argument of this case to be an *obiter
dictum*. We do not think so. Two questions arose there, one,
whether the surplus fund of the Philadelphia Saving Fund Society
was the subject of escheat; the other, whether the mode of pro-
ceeding was authorized. As to the former, we held that the
surplus was the property of the corporation for the ends and uses
of the charter. And as to the latter, that if the proceeding was
under the 9th section of the Act of 1865, it must be by quo war-
ranto; and if under the Act of 1869, to escheat a trust, that act
had provided no mode for its enforcement; and therefore, that
there was no authority in the deputy escheator to proceed at all.
Hence we concluded, that by reason of the *entire want of authority*,
the proceeding was illegal and void of sovereign sanction. And
on this ground he was to be enjoined as an *individual* acting
wholly without authority; and not as an officer executing a lawful
function. That case is therefore an authority, and was based, we
think, on sufficient reason; nor did we overlook, as it is thought,
the character of the interest to be escheated, as the *beneficial*
interest only of the cestui que trust; but the question in our minds
was, how this beneficial interest could be proceeded against under
and according to the mode provided in the Act of 1787, and its
supplements, allowing the most liberal interpretation of its pro-
visions. The case of The Commonwealth *v.* The North American
Land Co., 7 P. F. Smith 102, is not parallel. That was a case
of partnership property held by persons, all of whom were dead;
and there is no difficulty in applying to such a case the proceeding
under the Act of 1787. It was nothing more than a substitution
of the property of partners for that of a single owner, and required
no new mode. The case was new, but the proceeding similar.
Here we have, however, not only a new case, in that of a cestui
que trust unknown for seven years, but a necessity for a proceed-
ing adapted to the case of a living trustee, with a title and a right
to administer the trust unembarrassed by a dissimilar and discord-
ant proceeding. To escheat the property in his hands, the
Commonwealth must provide a means to come in under the trust
deed, in room of the cestui que trust. It is just here the Act of
1787 fails to furnish an appropriate remedy. Under that act the

only question is, whether the intestate died seised or possessed of the property without heirs or known kindred, and the further inquiry into whose possession the same came.

These facts being found, the property can be identified and described, and the inquisition certified into the proper office, and the Commonwealth can seize, attach or secure the property, unless the person in possession give bond to traverse the inquisition. These facts being found the Commonwealth has a primâ facie title, and the person in possession presumptively has no title, and is turned around to be the contestant. But a trustee is lawfully seised or possessed and no process can displace him, until he has had a day in court, and the beneficial interest is established against him. Clearly he is not in the case of one having a *mere* possession of property, which, by the *seisin or possession and death of the owner*, is cast as a waif upon the ocean waste without an owner to claim it. The trustee is therefore not to be subjected to a claim of the Commonwealth without some evidence of title, and a time and place to defend against it, for he must account to the true owner, who is no party to the proceeding under the Act of 1787, and not bound by the finding of the inquest. The trustee and not he is the party in possession, and the trustee is a steward for others and must protect their rights—rights which at the time may not be defined, or even capable of definition until his account is settled. How can the ex parte finding of an inquest in such a case seat the Commonwealth upon the trust ? Dying seised or possessed is evidence of title, but not so in a case like this. How is the claim of an unknown person as the beneficial owner to be ascertained by the inquest; or in other words, how is the fact of a trust for some person not known to be ascertained, by them, except through the deed of trust and the transactions of the trustee ? But clearly this implies a power over the trustee, and a settlement of his trust; and how is this to be managed by the deputy escheator and the inquest ? It is impossible for them to make a finding of property to be certified to the Commonwealth, except by calling in, not only the instrument of trust, but the trustee also, and investigating his affairs in order to find a fund belonging to somebody, and that somebody an unknown person. In such a proceeding it is evident that the trustee occupies the position of a party entitled to the fund, and to preserve it for the true owner, known or unknown; and therefore the right of the unknown person must be established against him by judgment. Now, for all this, the Act of 1787 and its supplements, are totally inadequate. In an attempt to administer the mode provided in them for a seisin or possession, and death without heirs or kindred, we should find ourselves at a loss in every step, and would have, in fact, to legislate, rather than administer the law. This case itself illustrates some of the difficulties to be met. It is alleged

that the Pennsylvania Company for Insurance on Lives, &c., holds funds under two trust deeds made three-quarters of a century ago, belonging to unknown owners. Now, under these deeds, whose claims are valid, and whose are not? who have been paid, and who not? who survive, and who do not? who succeed to the fund, and who do not? who are known, and who not? what are the rights of the known, and what the unknown? Does the failure of some to claim enure to the benefit of those who do claim? All these inquiries, and probably others, may have to be determined before an escheat can be ascertained, and who the unknown for seven years are; and what their interest to be found by the inquest. It is evident all these things can be determined only by the Court of Common Pleas having jurisdiction of the accounts of the trustee in a settlement of his trust estate in due course of law. And in the present case the jurisdiction of the court had vested, and the proceedings are still pending. Until the account be settled, how is it possible to tell who are the owners of the fund, and consequently, whether they are known or unknown; and how could the inquest therefore specify, under the Act of 1787, the estate of which the unknown owner is seised or possessed, and certify the same into the proper office, or how can the sheriff seize, attach or secure the same? How can an inventory or appraisement of the property be made? and on what principle, if a bond could be given, should the trustee, an admitted owner, be driven to traverse an ex parte finding? There may be no difficulty in ascertaining the beneficial interest in the case of a dry trust, or of property in a specific form, or an unclaimed deposit, or declared dividend, but such is not the case where the trust is active, with a power to convert, collect, &c., and when the beneficial interest can only be ascertained by a settlement and a decree of distribution. In this very case what do we know about the rights of the parties? Not a single exhibit referred to in the bill and answer is placed before us, as the appellant was bound to do under the 3d Rule, adopted September 6th 1852, 6 Harris 577. This, in itself, is sufficient to dismiss the appeal. In order to get rid of the insuperable difficulties which must arise in endeavoring to administer the Act of 1869 under the form provided in the Act of 1787, we are compelled to say, that the Act of 1869 is incapable of being carried into execution, and the legislature will have to provide some suitable mode of reaching cases of trusts, and others of like character. The decree of the judge of Nisi Prius is presumptively right, and until the appellant shows it to be erroneous, it must stand. He has not done this, and the decree is therefore affirmed, with costs to be paid by the appellant.