# Alton's Estate.

*Escheats—Decedents' estates—Constitutional law—Statute of limitations —Act of May 2, 1889, P. L. 66.*

The Act of May 2, 1889, P. L. 66, entitled "An Act defining and regulating escheats in cases where property is without a lawful owner, and providing for more convenient proceedings relative to the same," establishes a complete system of escheats, and it was the first and only

act which gave to the orphans' court jurisdiction over escheats. If a proceeding in escheat has been conducted fully and specifically in accordance with the terms of the act, and a final decree in escheat has been entered after notice has been published in the form as provided by the act, relatives of the decedent who had no actual notice of the proceedings cannot after the expiration of seven years from the date of the decree have the decree opened and secure restitution of the money from the treasury of the commonwealth.

The Act of May 2 1889, P. L. 66, does not contravene the constitution of Pennsylvania because it requires the orphans' court to certify an issue to the common pleas; nor does it contravene the constitution because it fixes a period of three years within which any interested party can traverse the final adjudication of escheat.

Where the orphans' court enters a final decree of adjudication and distribution, and in a different proceeding in the same estate enters a final decree of escheat, the court cannot subsequently at the instance of relatives of the decedent, open the decree of distribution and order restitution of the money by the state, without having previously vacated the final decree of escheat.

Argued Jan. 14, 1908. Appeal, No. 13, Oct. T., 1908, by Commonwealth of Pennsylvania, from decree of O. C. Allegheny Co., June T., 1896, No. 255, opening decree of distribution in Estate of James Alton, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Petition to open final decree of distribution and to secure restitution of money escheated to the commonwealth. Before HAWKINS, P. J.

The facts appear by the opinion of the Supreme Court.

The orphans' court in an opinion by HAWKINS, P. J., entered the following decree:

And now, to wit: October 30, 1907, this matter came on to be heard upon petition and demurrer thereto, and was argued by counsel and thereupon upon consideration thereof, it is ordered, adjudged and decreed that the decree of distribution made in above case on February 23, 1897, at No. 76, March Term, 1897, be and the same is hereby vacated and set aside and it is further ordered and decreed that the commonwealth of Pennsylvania, distributee of the fund as shown by said decree, viz.: $5,192.81 refund, and pay to petitioners as next of

kin of said defendant in accordance with the following sched-
ule of distribution, unless an appeal be taken herefrom within
twenty days.

PER CURIAM.

| | | |
|---|---|---|
| Balance as above . . . . . . . . . . | | $5,192.81 |
| To Clerk's Costs . . . . . . . . . . | $ 3.00 | |
| To Com. of Pa. Col. Int. Tax. . . . . | 259.44 | |
| | | 262.44 |
| Balance for Distribution . . . . . . | | $4,930.37 |
| To Wm. Jas. Wilsey, 1/2 . . . . . . | 2,465.19 | |
| To Jane Wilsey Oakes, 1/2 . . . . . | 2,465.18 | |
| | | $4,930.37 |

Less necessary costs and expenses incurred by the common-
wealth.

*Error assigned* was the decree of the court.

*Henry G. Wasson*, with him *H. K. Siebeneck* and *E. W.
Arthur*, for appellant.—If the decree of distribution be opened,
nevertheless, the decree of escheat still remains and stands in
the way of any recovery by the claimants : Hamilton v. Brown,
161 U. S. 256 (16 Sup. Ct. Repr. 585).

Pennsylvania being a sovereign state it can only be sued in
its own courts by virtue of its express consent : Edwards v.
R. R. Co., 215 Pa. 597.

There can be no doubt of the competency of the legislature
to provide for the escheating of property in the manner en-
acted by our statutes : Hamilton v. Brown, 161 U. S. 256 (16
Sup. Ct. Repr. 585).

The act of 1889 is constitutional : Thorpe v. Rutland & Bur-
lington R. R. Co., 27 Vt. 140 ; Miller's Est., 159 Pa. 562;
Bowman v. Knorr, 206 Pa. 272; Com. v. Green, 58 Pa. 226;
Commonwealth v. Smith, 4 Binn. 117.

Laches on the part of the petitioner has always been deemed
an insurmountable obstacle to opening a decree even within a
period of five years. When the ordinary forms of law have
been complied with, the fact that a particular party had no
knowledge thereof is no ground for allowing him to have a
decree opened : Priestley's Appeal, 127 Pa. 420.

*Arthur O. Fording*, for appellees.—Generally, the discretionary power of the orphans' court to correct its own wrong, and especially a clear mistake of fact, is beyond cavil: George's App., 12 Pa. 260; Parker's App., 61 Pa. 478; McNeel's Est., 68 Pa. 412; Whelen's App., 70 Pa. 410; Young's App., 99 Pa. 74; Milne's App., 99 Pa. 483; Johnson's App., 114 Pa. 132.

Assuming the validity of the act, and assuming that it implies a limitation, yet the latter is but a rule of administration which must yield to the equity of the case: Cowan's Est., 184 Pa. 339; Ross's Est., 9 Pa. 17; Mellon's App., 32 Pa. 121.

Statutes of limitation are recognized as beneficent laws. But when the plaintiff could not have sued within the time limited by the statute, it is not enforced: Hanger v. Abbott, 73 U. S. 532; Brown v. Hiatts, 72 U. S. 177; Little v. Price, 1 Md. Ch. 182; Montgomery v. Hernandez, 25 U. S. 129.

Section 22 does not even purport to bar a rightful claim after three years: Jackson v. Lamphire, 28 U. S. 280, 290; Terry v. Anderson, 95 U. S. 628; Koshkonong v. Burton, 104 U. S. 668; Ross v. Duval, 38 U. S. 45; Kenyon v. Stewart, 44 Pa. 179; Eakin v. Raub, 12 S. & R. 330; Korn v. Browne, 64 Pa. 55; Stephens v. Bank, 43 Mo. 385; Gilbert v. Ackerman, 159 N. Y. 118 (53 N. E. Repr. 753); Price v. Hopkin, 13 Mich. 318.

If the act of 1889 must be so construed as to bar a claimant at any time, then it is unconstitutional; for it provides for no citation or other notice to unknown claimants not in possession, and such as these appellees would be deprived of their property without due process of law: Stuart v. Palmer, 74 N. Y. 183; Security Trust Co. v. Lexington, 203 U. S. 323.

If the act 1889 must be so construed as to bar such an application as the present, then it is unconstitutional because it encroaches upon the constitutional power of the orphans' court to correct its own mistake of fact: DeHart v. Hatch, 3 Hun, 375; Alexander v. Bennett, 60 N. Y. 204; Popfinger v. Yutte, 102 N. Y. 38 (6 N. E. Repr. 259); Hutkoff v. Demorest, 103 N. Y. 377 (8 N. E. Repr. 899); Flynn v. R. R. Co., 142 N. Y. 439 (37 N. E. Repr. 514); George's App., 12 Pa. 260; Young's App., 99 Pa. 74; Johnson's App., 114 Pa. 132.

The act of 1889 is unconstitutional because it would require the orphans' court (sections 9 and 22) to certify to the common

pleas an issue which before 1874 the orphans' court could have determined itself, thereby derogating from the fixed constitutional power of the orphans' court: Moore v. Dunn, 147 Pa. 359 ; Ashford v. Ewing, 25 Pa. 213 ; Phillips v. R. R. Co., 107 Pa. 465.

OPINION BY MR. JUSTICE MESTREZAT, March 2, 1908 :

James Alton, a resident of Allegheny county, died intestate April 15, 1895, possessed of an estate consisting of money. It was not then known that he left to survive him a widow or kindred. Letters of administration on his estate were granted by the register of Allegheny county to Edward Kelly, Jr., on May 15, 1895. The auditor general of the commonwealth appointed F. C. McGirr, Esq., escheator of Allen's estate on August 11, 1896, and four days thereafter McGirr presented his petition to the orphans' court praying the court to determine whether or not an escheat had occurred, and for a citation on the administrator to file an account. The prayer of the petition was granted. On January 19, 1897, the administrator was directed to file an account within ten days, and also to expend a sum not exceeding $50.00 in procuring information and advertising in newspapers in New York city and county Kerry, Ireland, for decedent's next of kin. Advertisements were inserted in the " New York World " and in the " Kerry Sentinel," published in county Kerry, Ireland, where the decedent was born. The administrator made other efforts to find relatives of the decedent. On February 17, 1899, the court entered a decree, at No. 255, June Term, 1896, in the proceedings to declare an escheat, that the estate of James Alton had escheated to the commonwealth ; that the cause of the escheat had occurred by reason of the decedent having died seized and possessed of the property in question, intestate, without heirs or known kindred or widow ; that the estate which had escheated consisted of money in the hands of the administrator of the decedent, and that the estate is awarded to the escheator for and on behalf of the commonwealth. On February 23, 1899, in the audit of the account of the administrator, at No. 76, March Term, 1897, the orphans' court entered a decree of distribution and ordered that, after the payment of certain costs, expenses, etc., distribution of the balance of the fund be

suspended until the termination of the escheat proceedings at No. 255, June Term, 1896. There being no exceptions to the decree of escheat which, therefore, had become confirmed absolutely, the orphans' court, on April 1, 1899, ordered that the balance of the fund in the administrator's hands as shown by his account, distribution of which was suspended, be distributed to the escheator on behalf of the commonwealth of Pennsylvania. The decree directed the administrator to pay the sum directly to the state treasurer.

On December 8, 1906, William James Wilsey and Jane Wilsey Oakes presented a petition to the court setting forth that they resided respectively in the states of Oregon and Michigan; that they had never resided in Pennsylvania; that they were nephew and niece of decedent; that neither of them ever heard of the death of the decedent until August, 1902, when they heard that his estate had escheated for want of known kindred, and they were barred by the law of Pennsylvania from making any traverse of the adjudication; that in the summer of 1906 they were first advised that their right to the estate might still be established. They prayed that they might be permitted to traverse the adjudication, that the same might be vacated and annulled and that the commonwealth might be ordered to refund the money paid to it. The commonwealth filed an answer praying that the petition might be dismissed, and averring that the adjudication of the escheat was made in pursuance of the Act of May 2, 1889, P. L. 66, which required a traverse of the proceedings to be made within three years after the final. adjudication; that more than three years had elapsed since the final adjudication was entered and the balance of the estate had been paid to the commonwealth; that the petitioners are not entitled to receive the money paid to the commonwealth, nor any part of it; that the adjudication of escheat is final and conclusive upon all persons whatsoever, and that the court was without power to grant the relief prayed for.

The court below entered a decree on October 30, 1907, " that the decree of distribution made in above case on February 23, 1899, at No. 76, March Term, 1897, be and the same is hereby vacated and set aside, and it is further ordered and decreed that the commonwealth of Pennsylvania, distributee

of the fund as shown by said decree, $5,192.81, refund and
pay to petitioners as next of kin of said decedent in accord-
ance with the following schedule of distribution." From that
decree the commonwealth has taken this appeal.

Jurisdiction to escheat property to the commonwealth is
conferred and regulated by statute, Commonwealth v. Cromp-
ton, 137 Pa. 138, and the proceeding to escheat the property
of James Alton was taken under the Act of May 2, 1889, P. L.
66, 2 Purd. (13th ed.) 1468. This act substantially supplies
the former acts on the subject in force at the time of its pas-
sage. It confers jurisdiction on the orphans' court where an
escheat is supposed to have occurred by reason of any person
dying intestate, without heirs or known kindred, a widow or
surviving husband. Where no letters of administration have
been granted upon the estate of the decedent, letters may be
granted to the escheator. The proceedings to ascertain whether
an escheat has occurred or not are instituted by the escheator
presenting a petition to the court, setting forth the facts and
asking that the matter may be determined. The court is also
required to issue a citation to the administrator to show cause
why he should not file an account of the property alleged to
have been escheated, and if no cause be shown the court shall
direct an account to be filed. By section 8, the court is re-
quired to audit the account filed by the administrator, and
" shall upon said audit, proceed to inquire and determine
whether there has been any escheat or not and if so, in what
manner and for what cause said escheat has occurred and also
what estate, real or personal, has escheated, and what is the
value thereof." By the same section the court is empowered
" at any stage of the proceedings, when they may think it
wise so to do, to make such order relative to advertisements
and notices of the proceedings, as shall best serve to inform
and advise all parties having an interest, or who may have an
interest in said proceedings, of the pendency thereof."

The court is required after the determination of each case to
file of record a finding of adjudication setting forth certain
facts specified in the act. Parties in interest may except to the
adjudication or finding an escheat, and if any of the exceptions
are sustained the court is required to amend its adjudication or
finding in accordance with its determination upon the excep-

tions. If no exceptions are filed within the time specified, the adjudication shall be deemed to be confirmed absolutely. Either party may appeal from the final adjudication by the orphans' court. After the final determination of the escheat proceedings, the escheator is required to file a copy of the adjudication with the auditor general, and also, where real estate has been escheated, in the common pleas of the county where such real estate is situated. At the expiration of thirty days after the absolute confirmation of the adjudication in escheat, the parties having possession of the escheated money are required to pay it to the escheator, and he is required to pay it immediately into the state treasury.

Section 22 of the act provides, inter alia, as follows: " Any persons . . . . claiming to be interested in any property . . . . which shall be found to have escheated to the commonwealth . . . . who have had no actual notice by citation, advertisement or otherwise of the pendency of any proceedings in escheat . . . . may at any time within three years next after the filing of the final adjudication or finding in escheat, or the absolute confirmation thereof, traverse the same under oath or affirmation, by writing filed in the court finding the same." In case of a traverse, the adjudication of escheat is required to be certified to and tried in the common pleas. If the person filing the traverse is successful and sustains his claim to the money, the commonwealth is required to pay it to him.

It will be observed that by the act of 1889 the orphans' court was required to determine whether the escheat had occurred, and also to audit the account filed by the administrator. There were, therefore, two proceedings at the same time in the orphans' court affecting the decedent's estate. It will also be observed that the two proceedings were docketed at different numbers of the court and that each was carried to a final adjudication. The proceedings at No. 255, June Term, 1896, were begun by the escheator under the act of 1889 and resulted in a final adjudication of the escheat of the decedent's property. The proceedings at No. 76, March Term, 1897, were the audit of the account of Edward Kelly, administrator of the decedent, and resulted in a final decree distributing the amount shown to be in the administrator's hands to and among the parties entitled thereto.

It will be noticed, however, that the court below in its action on the application of the two relatives of the decedent for leave to traverse the adjudication of escheat, disregarded the fact that the escheat proceedings were separate and distinct from those of the audit, and that a decree had been entered in each proceeding. The prayer of the petition presented by Wilsey and Oakes was for leave to traverse the adjudication made in the escheat proceedings, that the same might be vacated and annulled, and that the moneys paid to the commonwealth might be decreed to be paid to them. The first two prayers of the petition required action to be taken in the proceedings to declare the escheat, and the last prayer required action to be taken to correct the alleged error in the distribution of the estate. The court, however, made no decree directly affecting the adjudication of the escheat, but ordered that the decree of distribution be vacated and set aside, and that the commonwealth refund to the petitioners the money paid it under the court's formal decree of distribution. As the record stands in the orphans' court, therefore, there is a decree of final adjudication of escheat, not excepted to or appealed from, and by which the commonwealth is entitled to the money of which the decedent died possessed. By the decree entered in the proceedings instituted by Wilsey and Oakes the formal decree of distribution made on February 23, 1899, at No. 76, March Term, 1897, is vacated, and the money of which the decedent died possessed is not adjudged to be the money or property of Wilsey and Oakes, but directly to be paid to them by the commonwealth, which holds it under the final decree of escheat. It is apparent that the two decrees conflict, and that both cannot be enforced. If the decree of escheat remains unimpeached and in force, the commonwealth is entitled to the money and cannot be ordered to pay it to anyone. So long as that decree is in force, it is of sufficient authority to justify the orphans' court in awarding the money to the commonwealth in the proceedings distributing the estate of the decedent. Until it is annulled or vacated, the decree of distribution cannot be modified or set aside so as to direct the payment of the fund by the commonwealth to Wilsey and Oakes. If they had been permitted to traverse the final adjudication of escheat, and had been successful in sustaining

their claim to the money, then the court, as provided by the act of 1889, could have directed the commonwealth to pay the money to them. There is nothing, however, in the act which authorizes the court to order or direct the commonwealth to pay the escheated money to any person so long as the final adjudication of the escheat remains in force.

If, however, we regard the decree of October 30, 1907, from which this appeal was taken, as having annulled and vacated the final adjudication of escheat, we do not think it can be sustained.

By sec. 12 of the Act of April 8, 1833, P. L. 315, 2 Purd. (13th ed.) 2002, it is provided: " In default of all such known heirs or kindred, widow or surviving husband as aforesaid, the real and personal estate of such intestate shall go to and be vested in the commonwealth by escheat." We have said that where no relative appears to take the estate, the act of 1833 names the commonwealth in default of known heirs or kindred: Linton's Estate, 198 Pa. 438. It will, therefore, be observed that the act of assembly declares that the property of a decedent shall escheat to the commonwealth in the absence of known kindred. It is necessary, however, to ascertain and determine whether the party who died seized or possessed of the property left any known kindred and for that purpose the assembly has on several occasions enacted legislation providing the mode of procedure by which the fact shall be determined. When the provisions of the statute, regulating the mode of procedure, have been complied with and a decree or judgment has been entered by a court of competent jurisdiction escheating the property to the commonwealth, such decree or judgment is conclusive evidence of the facts determinable by the proceedings, one of which is the right of the state to the decedent's property: Hamilton v. Brown, 161 U. S. 256. Where lands have been escheated to the commonwealth, its title can only be divested in the manner prescribed by the statutes relating to such estates: Straub v. Dimm, 27 Pa. 36.

The act of 1889 makes ample and complete provisions for escheating property of a decedent to the commonwealth. It is not alleged that the mode of procedure provided in the act was not complied with in escheating the estate of James Alton to the commonwealth. It is conceded that the appellees, who

are respectively nephew and niece of the decedent, did not make application to traverse the final adjudication of the estate within three years after the decree of adjudication was entered. In fact, as shown in the proceedings, the application to traverse the final adjudication was not made to the orphans' court for more than seven years after the decree was entered. In annulling its decree of distribution and awarding the estate of the decedent to the appellees and thereby in effect annulling the final adjudication of escheat, the learned court held that its jurisdiction, conferred by the constitution of 1874, empowered it to correct the mistakes of its former decree; that the legislature had no authority to deprive it of the power to correct its decrees and that the three years' limitation made the act of 1889 unconstitutional; that if the act is constitutional the limitation was a rule of administration and must yield to the equity of the claimant; and for the reasons stated in the court's opinion the decree of distribution must be set aside and the fund awarded to the appellees. The appellees contend in support of the decree that the limitation in the twenty-second section of the act was not a bar to a rightful claim after three years; and that the act of 1889 is unconstitutional because it provides for no citation or other notice to unknown claimants not in possession of the property, thereby depriving the appellees of their property without due process of law, because it encroaches upon the constitutional power of the orphans' court to correct its own mistakes of fact, and because sections nine and twelve require the orphans' court to certify to the common pleas an issue which before the constitution of 1874 the orphans' court could have determined itself, thereby derogating from the fixed constitutional power of the orphans' court.

We have no intention of taking up and discussing seriatim the reasons suggested in support of the decree of the court below. It would unduly lengthen this opinion and serve no good purpose. It is not necessary to discuss or determine the powers of the orphans' court under the constitution of 1874, and the authority or power conferred on the orphans' court by article 5, section 22 of the constitution wherein it is declared that the court shall " exercise all jurisdiction and power now vested in or which may hereafter be conferred upon the orphans' court."

Prior to the constitution of 1874, the orphans' court had no jurisdiction in cases of escheat, and hence this section of the constitution conferred no power upon it over escheats. The prior acts of the legislature relating to escheats conferred authority upon the Supreme Court and courts of common pleas throughout the commonwealth. No legislation prior to the act of 1889 gave the orphans' court any jurisdiction whatever in proceedings to declare an escheat, and the first and only jurisdiction of the orphans' courts of the commonwealth over escheats was conferred by that act. Such authority and power as those courts now possess they have by virtue of that legislation. In all proceedings, therefore, instituted in those courts to escheat the property of a decedent, the provisions of the act of 1889 must control and must be strictly adhered to in order to validate the final adjudication. If the orphans' court claims to exercise any jurisdiction whatever in proceedings of escheat, the provisions of that act must confer the authority or it does not exist. It, therefore, becomes unnecessary to determine the extent of the authority of the orphans' court to correct its decrees made in other proceedings arising before it.

As suggested above, the proceedings to declare the escheat of the estate of James Alton, deceased, were in exact compliance with the provisions of the act of 1889 from their inception to the decree of final adjudication. Does the act of 1889 transgress any of the provisions of the constitution? We do not agree with the learned court below or the appellees' counsel that it does violate any of the provisions of the present constitution. Nor do we consent to the proposition that the twenty-second section of the act is not a bar to the right to traverse an adjudication of escheat at the expiration of three years.

The act is entitled "An act defining and regulating escheats in cases where property is without a lawful owner, and providing for more convenient proceedings relative to the same." It establishes a complete system of escheats, and repeals all acts inconsistent therewith. The contention that it provides no notice to unknown claimants and hence deprives them of their property without due process of law cannot be sustained. Section eight requires the court "to inquire and determine whether there has been any escheat or not," and, in case of real estate, the court must "order and direct notice of said

proceedings to be served upon the person or persons in possession" of the property. The court is also invested with "full power and authority to summon any person or persons who shall be at any time alleged to have any knowledge touching any escheat or any interest therein, to appear before it." It is also provided in that section that "said court shall have full power and authority to examine any and all of said persons upon their oaths or affirmations, as to any fact or facts, matter or thing touching said escheat, and shall suffer and permit the escheator and all parties claiming to have any interest in said proceedings, to appear therein by counsel or otherwise, and to produce and examine such witnesses under oath or affirmation, as they may see fit, touching said escheat." Another provision of the section confers upon the court "full power at any stage of said proceedings, when they may think it wise so to do, to make such orders relative to advertisements and notices of the proceedings, as shall best serve to inform and advise all parties having an interest, or who may have an interest in said proceedings, of the pendency thereof." It may be conceded, for the sake of argument, that the legislature has no right to escheat property without notice actual or constructive. No party should be deprived of his property without an opportunity to be heard, and no act of assembly providing for escheating it to the commonwealth should fail to make provision for at least constructive notice of such proceedings. But the act of 1889, as will be observed, makes ample provision, not only for bringing any person before the court who may have any knowledge touching any escheat and giving them a full hearing in regard to it, but also for "such advertisements and notices of the proceedings, as shall best serve to inform and advise all parties having an interest, or who may have an interest in said proceedings, of the pendency thereof." It is true the act provides that the court shall make such order relative to notices and advertisements at any stage of the proceedings as the court may deem proper, but manifestly that means that the notices and advertisements of the proceedings are mandatory, and simply leaves discretionary with the court the time and manner of giving the notices and making the advertisements. This was evidently the view the court below took in this case, as it made an order, not only that notice be given

but that a part of the fund should be devoted to pay the expenses of the advertisements. The record discloses that advertisements were inserted in the newspapers of the localities where the relatives of the decedent, if he had any, would be found. It also appears that the administrator, by correspondence and otherwise, made every effort to notify all persons who he thought were related to the decedent of the proceedings pending for the escheat of the property. The act of assembly was, therefore, construed to require notice of the proceedings by advertisement, and advertisements were duly made, and other notices of the pending escheat proceedings were given.

The contention that the act of 1889 contravenes the constitution because it requires the orphans' court to certify an issue to the common pleas cannot be sustained. The proceeding is statutory and the legislature had authority to confer upon the common pleas such power in determining an escheat as it thought proper. In directing an issue to be certified to the common pleas in such cases, the legislature deprived the orphans' court of no power it had theretofore possessed.

The legislature had the power to fix a reasonable time within which any interested party should traverse the final adjudication of escheat. This power has been exercised by the legislature of this state for nearly a century and a quarter, and no arguments have been adduced or authorities cited which warrant the conclusion that it offends either the federal or state constitution. Limitations of actions, either by prescription or by statute, are older than any of our constitutions or common law : Kenyon v. Stewart, 44 Pa. 179, 191. Whatever belongs merely to the remedy, adapted for the acquisition of a right, may be altered according to the will of the state, provided the alteration does not impair the obligation of a contract ; and such result is not worked where a substantial remedy is left to the parties according to the ordinary course of justice : Long's Appeal, 87 Pa. 114 ; Bronson v. Kinzie, 42 U. S. 311, 316 ; Railroad v. Hecht, 95 U. S. 168. It is a well-settled rule, that legislation that affects the remedy merely, and does not deny the right, is not open to objection upon constitutional grounds : Sayres v. Commonwealth, 88 Pa. 291. In the case in hand, the right of the appellees to the estate of James Alton

was not assailed or denied them by the limitation prescribed in the act of 1889. The act recognizes their constitutional right to the property and provides an adequate remedy for enforcing it. But while recognizing the right and furnishing a remedy for its enforcement, the legislature restricts and limits the remedy by providing that it shall be pursued within a reasonable time. This provision does not deprive the appellees of their right to the property, but simply imposes a reasonable limitation as to the time in which it shall be enforced. The power of the legislature to furnish the remedy includes the power to impose reasonable limitations on its enforcement.

It is true that all courts have authority to supervise their process and correct their decrees so long as the proceedings are within their grasp. That principle is applicable not only to the orphans' court but to the common pleas. But there must be a finality to all legal proceedings and the principle cannot be invoked to authorize a court to exercise such summary power except within reasonable limits. In Evans v. Maury, 112 Pa. 300, this court in speaking of the power of the common pleas to supervise its process said (p. 314): "This is true so long as the proceedings are within its grasp. But after they are completed and ended there must be a time come when the power of the court to interfere summarily for the correction of supposed evils shall cease." This case was followed and the principle enforced in the recent case of Lengert v. Chaninel, 208 Pa. 229. In the case cited by the appellee as announcing a different doctrine in the orphans' court, it will be found that where the court attempted to correct its errors it still retained its grasp over the parties or the fund, or over both.

In the case at bar, the final decree of adjudication of escheat was made in February, 1899, and later in the same month, the account of the administrator was audited by the orphans' court, and the balance of the fund in the hands of the administrator was awarded to the escheator for the commonwealth. The money payable to the state was at once paid into the state treasury. As required by the act of assembly, the one-third of the fund was paid to the informer who gave bond, as required by the statute, to refund to the commonwealth if a

successful claimant appeared within three years. This bond is not now a security for the money paid the informer which would doubtless be lost to the state.

If this decree of escheat can be set aside and annulled, of course it follows that no adjudication of escheat is or can be final. The result would be that the decree would not vest the title to the escheated property in the commonwealth, but make the commonwealth simply a depository of the property for any person who might come in at any time in the future and establish his relationship to the decedent. This would be unjust to the commonwealth and it would make the proceedings in escheat practically a farce, and permit the decree of the court to be annulled and set aside at the pleasure of any absentee regardless of his negligences and laches. As held in the case of Cunnius v. Reading School District, 206 Pa. 469 : " The state is not bound to have the regular and lawful use and ownership of property subject to the whim of an individual in absenting himself indefinitely or for a very long period of time from the state."

The decree of the court below is reversed and the petition of William James Wilsey and Jane Wilsey Oakes, praying for the annulment of the adjudication of escheat and the payment to them of the escheated money awarded the commonwealth, is dismissed, the cost of this proceeding in the court below and in this court to be paid by the petitioners.