Alpern, Attorney General, *v.* Girard Trust
Corn Exchange Bank, Appellant.

392

Argued November 22, 1960. Before JONES, C. J., MUSMANNO, JONES, BOK and EAGEN, JJ.

*Philip Price,* with him *Spencer G. Hall, Arthur E. Newbold, III, Theodore Voorhees,* and *Barnes, Dechert, Price, Myers & Rhoads,* and *Nauman, Smith, Shissler & Hall,* for appellant.

*Jack M. Cohen,* Deputy Attorney General, and *Raymond J. Bradley,* Special Assistant Attorney General, with them *Samuel B. Blaskey,* Special Counsel, for appellee.

OPINION BY MR. JUSTICE EAGEN, April 17, 1961:.

The Attorney General of the Commonwealth of Pennsylvania filed a petition in the Court of Common Pleas of Dauphin County for an order directing the Girard Trust Corn Exchange Bank of Philadelphia, (hereinafter called Girard), to pay into the State treasury, without escheat, certain alleged unclaimed funds, the rightful owners of which are unknown. The respondent, Girard, pursuant to the Act of March 5, 1925, P.L. 23, §2, 12 PS §673, challenging the jurisdiction of the court below, filed a petition asking dismissal of the action. The court below refused to dismiss and from said order this appeal is prosecuted.

The Commonwealth's petition was filed under the Act of May 16, 1919, P.L. 177, as supplemented and amended, 27 PS §431 et seq., which provides for the payment into the state treasury, without escheat, funds made escheatable under any other statute of the Commonwealth.[1] The petition alleges that the funds involved are escheatable under the Act of June 7, 1915, P.L. 878, as amended, 27 PS §241 et seq. This statute which applies, inter alia, to national banks and trust companies authorizes the escheat of money, property and debts which have remained unclaimed, or where the owners of which have been unknown for a period of seven successive years or more.

While many unique and interesting questions are involved in this issue, the narrow question presently

---

[1] Under this statute, any funds or property subject to escheat may be taken by the Commonwealth, without escheat, i.e., the Commonwealth takes custody and control thereof but not legal title thereto. The object of taking "without escheat" as opposed to "pure escheat" is to afford the rightful owner or his lawful heirs, without limitation as to time, the right to claim restitution or refund of such property or money. Interest is payable on monies refunded at the rate of two per cent per annum from the date of payment of such monies into the state treasury to the date of refund.

before this Court is whether or not the Court of Common Pleas of Dauphin County may hear and determine the controversy. Whether or not the allegations of the petition can be sustained is not now before us. All we are to decide is, whether or not under the facts pleaded, the Attorney General may prosecute this action in the court in which it was instituted.

Basically, the action involves funds now held by Girard, or used for its own purposes, which allegedly came into being as a portion of the earnings and profits realized from the use of monies it held in years past in various fiduciary capacities. Count one of the petition concerns interest and earnings realized from the use of funds held by Girard as guardian, executor, administrator, testamentary trustee, inter vivos trustee, agent and trustee under corporate trust indentures, during the period of 1906 through November 23, 1915. Count two involves earnings and profits realized from the use of funds held by Girard in each of the fiduciary capacities specified in count one, except funds held by it under corporate trust indentures, and covers the period of December 1, 1915, through November 30, 1935. Count three involves interest and earnings from the use of funds held by it as a trustee under corporate trust indentures, during the period of December 1, 1915, through November 10, 1936.

The petition alleges, that Girard in the course of its business during the years involved, received the funds and property of a great number of individuals, estates, trusts and corporations, which it had under its control in a fiduciary capacity; that from time to time, Girard had on hand certain cash balances belonging to those having a beneficial interest in these various fiduciary accounts, which cash it did not invest for the benefit of the owners. Instead, Girard commingled all of this cash and deposited it in accounts, under its own name, with other banking institutions.

At intervals, these banking institutions would credit the accounts, standing in Girard's name, with interest earned on these funds. At various times, Girard withdrew some of the cash on deposit in these accounts and made investments in securities and in interest bearing loans, and these earnings were added to the deposits of the accounts maintained in its own name. In lieu of distributing pro rata all of this interest and earnings to the various beneficial owners, entitled thereto, Girard withdrew portions thereof and applied these sums to its own use.

The petition further alleges that, as a result of Girard's commingling these funds, from whence the earnings came; by reason of the commingling of both principal and earnings; by virtue of its failure to segregate, divide and allocate all of the interest and earnings among those legally entitled thereto, it became impossible to ascertain the real and lawful owners of the interest and earnings, either at the date of the commingling or at any later date. Thus, for more than seven successive years, the funds involved have been unclaimed, and the rightful owners thereof unknown.

It is further alleged, that Girard has never accounted for these funds to the lawful owners or to any court and, that the estates or trusts entitled to these funds are no longer active and such of them as were active, when the funds were taken, are now terminated.

Girard contends that the practice complained of has been customary in banking institutions for many years; that it has always rightfully claimed the funds involved as its own; that the petition for escheat clearly manifests that these funds are trust funds, subject to the jurisdiction of the Orphans' Court of Philadelphia County and other counties; and, that, therefore, the Court of Common Pleas of Dauphin County has no jurisdiction.

It is argued that the funds involved are in large measure either a part of, or derived from, other funds

which have been previously distributed by the orphans' courts of other counties, principally Philadelphia County, and that any accounting therefor must legally be made in the orphans' courts of those counties. Before any escheat or custodial taking can be determined, it must be resolved first that there are funds due others for which no claims by them have been made. This, it is urged, would require a review of all accounts heretofore filed by Girard in Philadelphia County, and all other such counties, to decide whether or not any trust funds or earnings therefrom exist, which were improperly unaccounted for. Therefore, it is strenuously contended that an application for custodial taking or escheat under the Act of 1919, supra, must be made to the orphans' courts of the counties, who have jurisdiction of these trust accounts. In support of this position, section one of the Act of 1919, supra, is cited, which states, inter alia, as follows: "(1) If the said moneys or property are held by the person, firm, association, bank, national bank, trust company, or other corporation, in any fiduciary capacity whatsoever, then the said application shall be made to the court having jurisdiction of his or its accounts. (2) If the said moneys or property have been paid into or deposited in and are in the custody of any court, the application shall be made to the court having custody of such moneys or property. If the said moneys or property are held by any prothonotary, clerk of orphans' court, or any other officer of any court, the application shall be made to the court of which he is an officer. (3) In all other cases, the application shall be made to the court of common pleas of the county in which the person holding or possessed of such items has his residence, or the firm, association, bank, national bank, trust company, or other corporation, holding or possessed of such items, has its principal office." (Division of statute supplied).

Girard further maintains that the jurisdiction of the orphans' court of the particular county, in which

the account was filed and adjudicated, is exclusive under the provisions of the Orphans' Court Act of August 10, 1951, P.L. 1163, 20 PS §2080.101 et seq., and its legislative predecessors.

It is our considered conclusion that the Court of Common Pleas of Dauphin County does not have jurisdiction of the subject matter in this case, for the reason that the Act of 1919, as amended, supra, vests exclusive jurisdiction of actions instituted thereunder in the particular courts enumerated therein. This is a special statute dealing with a particular matter. It completely governs all such actions. Until its passage, an action of this nature did not exist. Section one of the statute definitely relates to jurisdiction. It provides that in suits instituted thereunder "application shall be made" to certain specified courts. Depending upon the case, the court to which application shall be made may be a particular court of common pleas, or a particular orphans' court, or a particular court of quarter sessions, or the Municipal Court of Philadelphia, or the County Court of Allegheny County, or the Superior Court or the Supreme Court. *Reading Company's Appeal,* 343 Pa. 320, 22 A. 2d 906 (1941), is not controlling and must not be extended beyond its own facts. Therein the Act of April 9, 1929, P.L. 343, 72 PS §1, was involved, which provides for the escheat and complete divesture of funds. We are herein concerned with a statute providing for the payment of funds into the State treasury, without escheat. The ramifications of the two situations are substantially different.

Since this disposes of the sole issue before us on this appeal,[2] nothing further needs be said. However, in view of the importance of the cases, we are constrained to further our discussion.

---

[2] The objections and appeal raise only the issue of jurisdiction since the issue of venue would not be appealable: *McGinley v. Scott,* 401 Pa. 310, 164 A. 2d 424 (1960).

We do not agree with the appellant that jurisdiction of the subject matter is in an orphans' court, either under the Act of 1919 or the Act of 1951. Under the facts pleaded, Girard, by the commingling of all of the funds described, rendered it impossible to intelligently determine to what person, estate, personal trust, agency account, or corporate trust, the earnings involved should be allocated. This is not only the fact as of now, but has been true ever since the commingling began. Separating the total into component parts, and ascertaining what is due certain and specific individuals or owners, is just not possible. Hence, there is not now, nor has there been for many successive years, a known or a definitely ascertainable group of trusts entitled to these funds requiring further administration and distribution. In addition, as the petition points out, the estates or trusts, which made these earnings possible, are no longer active and such of them as were active at the dates of the withdrawal have been terminated. Hence, this involves no jurisdictional conflict between a common pleas court and an orphans' court. Girard is no longer administering the res of any trust that might be involved. Such trusts have ceased to exist. Orphans' court jurisdiction has long since ceased. *Commonwealth v. Naile,* 88 Pa. 429 (1879), is apposite. That case involved a proceeding in escheat of trust property in the possession of the testamentary trustee, Naile. The beneficiary of the trust had died and the trustee merely held the proceeds of the trust with no active duties. This Court stated, at p. 435, that if this had been an active trust, escheat would not lie, but, "In this case, the machinery it [escheat] provided can be applied without strain and without hazard of mischievous consequences . . . *The trust has ceased to exist. Its active duties ended with the sale.* The trustee became the debtor of the distributees for the amount

found due them in his hands."[3]  See, also, *Wilson v. Board of Directors of City Trusts,* 324 Pa. 545, 188 Atl. 588 (1936) ; *West v. Penna. Co.,* 64 Pa. 195 (1871) ; *Linton's Estate,* 198 Pa. 438, 48 Atl. 298 (1901).

Nor will this amount to a collateral attack on the decree of an orphans' court.  As the petition states, the funds have never been reported, or accounted for, to any other court.  An audit thereof was never consummated or attempted.  As pointed out in the *Estate of John Vogle, Deceased,* 96 Pa. Superior Ct. 510 (1929), an account of a fiduciary, confirmed by the orphans' court, is only conclusive of what it contains. True, the orphans' court has the power to reopen its own adjudication within a period of five years, under the Fiduciaries Act of April 18, 1949, P.L. 512, art. VII, §721, 20 PS §320.721. It further enjoys the inherent power to set aside an adjudication at any time upon the showing of fraud: *Elkins's Estate,* 325 Pa. 373, 190 Atl. 650 (1937). However, as stated in *Alton's Estate,* 220 Pa. 258, 272, 69 Atl. 902 (1908), "It is true that all courts have authority to supervise their process and correct their decrees so long as the proceedings are within their grasp. That principle is applicable not only to the orphans' court but to the common pleas.  But there must be a finality to all legal proceedings and the principle cannot be invoked to authorize a court to exercise such summary power except within reasonable limits."  It would appear to us that after the long lapse of years involved in this case, the "reasonable limits" of orphans' court exclusive jurisdiction has long since been reached and no longer exists in regard to the singular facts presented.

Jurisdiction of this matter is in the Court of Common Pleas of Philadelphia County.

---

[3] (Emphasis supplied.)

The order of the lower court is reversed and the petition is dismissed.

Mr. Justice COHEN took no part in the consideration or decision of this case.