## Commonwealth v. Camiel

*George Bristol*, Assistant Attorney General, for Commonwealth.

*Thomas A. Beckley of Rhoads, Sinon & Reader*, for defendant.

BOWMAN, J., October 18, 1968.—By preliminary objection defendant property owner challenges the jurisdiction of this court to entertain plaintiff's complaint in equity which seeks to enjoin defendant from interfering with entry upon his land by Pennsylvania Department of Highways personnel for the purpose of making preliminary studies and surveys incident to the proposed construction of a State highway. The land in question is situated in Montgomery County.

The issue is whether the Montgomery County Court has exclusive jurisdiction over the equitable action

pleaded or whether this court enjoys concurrent jurisdiction with that of Montgomery County because the Commonwealth is the party plaintiff.

In its complaint the Commonwealth asserts as its authority to make such entry section 409 of the Eminent Domain Code of June 22, 1964, Sp. Sess. P. L. 84, 26 PS §1-409, which provides:

"Prior to the filing of the declaration of taking, the condemnor or its employes or agents, shall have the right to enter upon any land or improvement which it has the power to condemn, in order to make studies, surveys, tests, soundings and appraisals, provided that the owner of the land or the party in whose name the property is assessed has been notified ten days prior to entry on the property. Any actual damages sustained by the owner of a property interest in the property entered upon by the condemnor shall be paid by the condemnor and shall be assessed by the court or viewers in the same manner as provided in section 408".[1]

Averments of requisite notice having been given and of defendant's refusal to permit entry upon his land are set forth in plaintiff's complaint, as are other factual averments necessary to state a cause of action in equity. These are not disputed by defendant who relies solely upon section 401 of the same act as negating the statutory right of the Commonwealth as a party plaintiff to pursue at its option a cause of action in the courts of this county, including those cognizable in equity, or in the courts of the county where jurisdiction and venue would otherwise lie. Section 401, upon which defendant relies, provides in part:

"The court of common pleas shall have exclusive jurisdiction of all condemnation proceedings. All con-

---

[1] Section 408 recognizes a property owner's right to damages upon a revocation of a condemnation and sets forth procedures to ascertain the amount of any such damages.

demnation proceedings shall be brought in the court of common pleas of the county in which the property is located. . . ."

Defendant contends that the words "condemnation proceedings" as employed in this section are intended to encompass all provisions of this new codification of the law on the subject of eminent domain, including the provisions of section 409. This is evident, he contends, by the legislative declaration that the act is to apply to all condemnations[2] (section 302) and is to provide an "exclusive procedure and law" to govern all condemnations (section 303) notwithstanding the heading of section 409 that it pertains to the "Right to enter property *prior to condemnation*".

The Commonwealth, on the other hand, contends that such a conclusion affords a too broad meaning to "condemnation proceedings" as employed in section 401. It argues that the exercise of the right of entry given a "condemnor" by section 409 would necessarily precede a filing of a declaration of taking which effects a passage of title (section 402) and gives a condemnor a right of possession (section 407) and which act, the filing of the declaration of taking, is the first step in the legal exercise of the power of eminent domain. Under such circumstances, the Commonwealth contends, the use of the word "condemnor" in section 409 is employed as a word of art meaning one possessed of the power of eminent domain as is evident by the heading of the section conferring a right of entry prior to the legal act of condemnation.

There would seem to be no question that upon an *exercise* of the right of entry to one possessed of the power of eminent domain the legislature intended the local court to have exclusive jurisdiction over determination of any damages which might flow from

---

[2] With certain exceptions not here applicable. See sections 303 and 901.

said act even though a formal condemnation might never follow. This is evident from those provisions of section 409 which establish a right to damages flowing from such an entry and the incorporation by reference of another section of the act for determination of the amount of damages so suffered by a property owner. Thus, the legislature equated an *exercise of a right of entry* by a "condemnor" with a "condemnation proceeding" even though the legal act of condemnation has not and may never take place.

But can it also be said that the legislature intended to deprive the Commonwealth of its prerogative to enforce its statutory right of entry by appropriate action in the courts of this county? This is the narrow issue before us.

The Act of April 7, 1870, P. L. 57, as amended by the Act of May 25, 1937, P. L. 793, 17 PS §255, the basic statutory law involved, provides:

"The court of common pleas of the county of Dauphin and the judges of the orphans' court of Dauphin County are hereby clothed with jurisdiction, throughout the State, for the purpose of hearing and determining all suits, claims and demands whatever, at law and in equity, in the court of common pleas of said county, in which the Commonwealth may be the party plaintiff for accounts, unpaid balances, unpaid liens, taxes, penalties and all other causes of action, real, personal and mixed".

In Commonwealth ex rel. v. Wilkins, 271 Pa. 523 (1922), an action in mandamus was initiated in this court by the attorney general directed against local school officials of another county. In discussing the Act of 1870, it was said, pages 526, 527:

"The remedy which this act was intended to provide, compels an approval of the conclusion reached by the court below; for its evident purpose is that the Commonwealth, when suing in her own right, shall

be allowed to prosecute her claims at the seat of government, and not be required to go to other parts of the State, where the defendants happen to reside. The fact that, under other legislation, she has also the privilege of proceeding wherever the defendants may be found and served with process, is beside the question; for this does not repeal the Act of 1870, either expressly or by implication, and hence she still has the absolute right to litigate her claims in Dauphin County, if she chooses so to do".

Again, in Reading Company's Appeal, 343 Pa. 320 (1941), the concurrent jurisdiction of this court with that of local courts in cases involving the Commonwealth as the party plaintiff was in issue. In that case the attorney general petitioned this court for the escheat of certain property under the Fiscal Code which provided that such proceedings shall be instituted in the county of the principal office of the corporation from which escheatable property is sought. In sustaining the Commonwealth's option to choose this court for enforcement of its rights, the Supreme Court stated, pages 322, 323:

"These acts are reconcilable and the Commonwealth 'still has the absolute right to litigate her claims' of any nature, at law and in equity 'in Dauphin County, if she chooses so to do': Commonwealth v. Wilkins, 271 Pa. 523, 115 A. 887. This conclusion is supported by the rule of statutory construction that unless the legislature by express words or necessary implication, deprives the state of one of its existing prerogatives or interests, the presumption is against such an interpretation: See Endlich on the Interpretation of Statutes, Section 161, p. 223. . . .

"In Endlich (supra) the following principle is laid down: 'It is presumed that the legislature does not intend to deprive the Crown of any prerogative, right or property, unless it expresses its intention to do so

in explicit terms, or makes the inference irresistible. Where, therefore, the language of the statute is general, and in its wide and natural sense would divest or take away any prerogative or right, titles or interest from the Crown, it is construed so as to exclude that effect. . . .' "

In Commonwealth v. The Mutual Assurance Company, 16 D. & C. 2d 679, 72 Dauph. 144 (1958), by complaint in the nature of a bill in equity, the attorney general sought certain funds in the hands of defendant insurance company without escheat. The action was instituted in this court although the insurance company's principal office was located in another county. The statute involved was the Act of June 25, 1937, P. L. 2063, section 7 of which provided that the local court of common pleas "shall have jurisdiction of *any and all* proceedings or actions *instituted by the Commonwealth* for the recovery of such moneys or property".

We there held that the statutory language conferring jurisdiction on the local court did not foreclose the Commonwealth's option to sue in this court. We said, page 681:

"We are of the opinion that where jurisdiction is vested in a local court of common pleas, and at the same time jurisdiction has already been conferred upon the Commonwealth court, this must be construed as giving the Commonwealth an election to bring the action either in the local court or in the Common Pleas Court of Dauphin County, unless the legislature specifically and in direct language has barred action in any other court than that on which it has conferred jurisdiction by its Act".

We also pointed out in that case the full recognition accorded the Act of 1870 so far as venue is concerned by the Pennsylvania Rules of Civil Procedure.[3]

---

[3] See Pa. R. C. P. 2103 and 1503(b) as to equitable actions.

However, subsequent decisions of the Pennsylvania Supreme Court and of this court have declared as less than absolute the Commonwealth's option under the Act of 1870 to sue in this court or the local court otherwise having jurisdiction over the subject matter. In Alpern, Attorney General v. Girard Trust Corn Exchange Bank, 403 Pa. 391 (1961), it was held that this court was without jurisdiction to entertain a petition for payment into the State Treasury *without escheat* of certain property in the possession of an insurance company, the principal office of which was located in another county. The proceedings were under the Act of May 6, 1919, P. L. 177, as amended, 27 PS §431. It was there said, page 397:

"It is our considered conclusion that the Court of Common Pleas of Dauphin County does not have jurisdiction of the subject matter in this case, for the reason that the Act of 1919, as amended, supra, vests exclusive jurisdiction of actions instituted thereunder in the particular courts enumerated therein. This is a special statute dealing with a particular matter. It completely governs all such actions. Until its passage, an action of this nature did not exist. Section one of the statute definitely relates to jurisdiction. It provides that in suits instituted thereunder 'application shall be made' to certain specified courts. Depending upon the case, the court to which application shall be made may be a particular court of common pleas, or a particular orphans' court, or a particular court of quarter sessions, or the Municipal Court of Philadelphia, or the County Court of Allegheny County, or the Superior Court or the Supreme Court. Reading Company's Appeal, 343 Pa. 320, 22 A. 2d 906 (1941), is not controlling and must not be extended beyond its own facts. Therein the Act of April 9, 1929, P. L. 343, 72 PS §1, was involved, which provides for the escheat and complete divesture of funds.

We are herein concerned with a statute providing for the payment of funds into the State treasury, without escheat. The ramifications of the two situations are substantially different".[4]

Without any reference to or discussion of the Act of 1870 and with but a reluctant affirmance of Reading Company's Appeal, supra, in declaring it should be limited to its facts, it is difficult to assess the impact of this decision upon the previously well established rule that in the absence of an express statutory prohibition or a contrary irresistible inference, the Commonwealth in exercise of its rights under the Act of 1870 may assert its cause of action in the Dauphin County Courts.

Most recently, in Commonwealth v. Springer, 39 D. & C. 2d 341, 85 Dauph. 50 (1966), we concluded that this court was without jurisdiction to entertain a complaint in equity initiated by the Commonwealth to abate as a nuisance a public bathing place located in another county. In that case the Public Bathing Law of June 23, 1931, P. L. 899, 35 PS §672, provided for the abatement of public nuisances arising from noncompliance with the act "by an action brought by the Attorney General in any common pleas court of the county when (where) such public nuisance is being maintained". We there said, page 344:

"The determination of the intent of the legislature cannot be made in the abstract by comparison with other statutes. Consideration must be given to the

---

[4] Also see Alpern, Attorney General v. Fidelity-Philadelphia Trust Company, 403 Pa. 400 (1961), Alpern, Attorney General v. Hallman, 403 Pa. 402 (1961) and Stahl, Attorney General v. Insurance Company of North America, 408 Pa. 483 (1962), reaching the same conclusion as to proceedings involving payment without escheat into the State Treasury under the same or similar statutes directing such proceedings to be initiated in the court of the county where the property or the principal office of the possessor is located.

normal and reasonable intention of the legislature in relation to the type of relief provided for in the particular act. The abatement of a nuisance is peculiarly adaptable to a local court. Its enforcement by another court outside of its locality involves practical difficulties".

We reached such a conclusion because we believed that the Girard Trust case and those following it require, in ascertainment of the legislative intent, not only a consideration of the jurisdictional provisions of a particular statute compared to those of the Act of 1870 but also an analysis of the subject matter of a particular statute, the rights and remedies it creates and provides for and problems inherent in the adjudication and enforcement of such rights and remedies.

Applying this principle as a guide, can it be said that the legislature intended to deprive the Commonwealth of its option under the Act of 1870 to enforce in the Dauphin County Courts its right of entry given to it by section 409 of the Eminent Domain Code? We think not.

We are not here concerned with the exercise of the common law jurisdiction of a common pleas court but that of its equity jurisdiction. While the right of entry was created by a particular statute, the legislature in this same statute made no provision, specifically or inferentially, for its enforcement. Hence those possessed of the power of eminent domain and attempting to enforce this right must look outside of the particular statute and to a court of equity in exercise of its chancery powers of granting injunctive relief: Calabrese v. Collier Township Municipal Authority, 430 Pa. 289 (1968). In invoking equity jurisdiction and seeking an injunction, the Commonwealth asserts a right and asks for relief not provided for in a particular statute but within the general

law relating to the jurisdiction of equity and the exercise of its powers.

Under such circumstances, we cannot find in the language of section 401 giving the local *court of common pleas* exclusive jurisdiction over all *condemnation proceedings* a legislative intent to deprive the Commonwealth of its option under the Act of 1870 to invoke the equity jurisdiction of the local court or of the courts of this county in enforcement of its right of entry. There is nothing unique in such a proceeding nor are there any peculiar problems inherent in the determination of the issues or in the enforcement of the relief granted if relief is warranted. This court on a State-wide basis has long dealt with enforcement of injunctive relief granted in equity cases. The problems encountered have been only those that would arise in any common pleas court exercising chancery powers and granting such relief.

For the foregoing reasons, we enter the following

ORDER

And now, October 18, 1968, defendant's preliminary objection challenging the jurisdiction of this court over the subject matter of plaintiff's complaint in equity is hereby overruled. Defendant is granted leave to file answer to plaintiff's complaint within 20 days of the date hereof.