Pennsylvania Railroad Company Escheat Case.

Argued November 22, 1943. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Ralph B. Umsted,* with him *Harry F. Stambaugh,* Special Deputies Attorney General, and *James H. Duff,* Attorney General, for appellant.

*George Wharton Pepper,* of *Pepper, Bodine, Stokes & Schoch,* with him *Frank A. Bedford, Jr., John D. M. Hamilton, Spencer G. Nauman* and *John Dickinson,* for appellee.

Opinion by Mr. Justice Horace Stern, January 3, 1944:

It may well be that the Commonwealth is entitled to the escheat of certain moneys in the possession of the Pennsylvania Railroad Company as claimed in these proceedings, but, whether this be so or not, such right is not established by the present fragmentary record.

The facts giving rise to the action take us back to the first World War. When the government issued its Liberty Loans in 1917 the Pennsylvania Railroad Company, in order to encourage its employes to subscribe, instituted a plan whereby the Company was to buy bonds and the employes were to be allowed to purchase them by means of instalment payments. These payments were to be made by the Company's deducting a certain amount each month from the subscribing employe's wages, and when a bond was finally paid for in this manner the Company was to deliver it to the employe; if a subscriber failed to complete his payments, either because of leaving the service of the Company or for any other reason, the instalment deductions then standing to his credit were to be paid to him with interest.

On January 1, 1918, the United States Railroad Administration took possession of the operating property of the Company and thereupon all the employes of the latter became employes of the Director General of Railroads: *Missouri Pacific R. R. Co. v. Ault,* 256 U. S. 554; *Hanlon v. Davis, Director General of Railroads,* 276 Pa. 113, 119 A. 822 (cert. denied, 262 U. S. 742, 762) ; *Park v. Hines, Director General of Railroads,* 91 Pa. Superior Ct. 176. Thereafter the deductions from the payroll on account of the subscriptions made in 1917 by the Company's employes were continued by the Railroad Administration and credited to the Company, and apparently all obligations in regard to those subscriptions were subsequently met by the Company, either by deliveries of bonds or return of instalment payments as agreed

upon in cases where the purchases were not completed. In 1918 the Railroad Administration inaugurated a similar plan on its own account with those who were now *its* employes, covering subscriptions to the third and fourth Liberty Loans issued that year by the Government, and it made wage deductions to cover these subscriptions also, and delivered the bonds, when paid for, to its employes.

The present litigation arises from the fact that in June, 1918, the Railroad Administration made journal entries on its books giving a credit to the Pennsylvania Railroad Company for the sums deducted from the payroll that month not only in connection with the subscriptions by the Company's employes to the Liberty Loans of 1917, amounting to $8,614.50, but also in connection with the subscriptions of its own employes to the Liberty Loans of 1918, amounting to $20,888.80. In July, 1918, similar credits were given for payroll deductions that month of $8,333.00 on account of subscriptions to the 1917 Liberty Loans, and $20,453.00 on account of subscriptions to the 1918 Liberty Loans, and in August, 1918, for payroll deductions that month of $8,188.50 on account of subscriptions to the 1917 Liberty Loans, and $19,192.50 on account of subscriptions to the 1918 Liberty Loans. The Commonwealth makes no claim in regard to the three credits thus given on account of subscriptions to the 1917 Liberty Loans, since, as already stated, these covered bonds contracted for with the Company by its employes and for the delivery of which the Company was obligated and for which it has presumably accounted to them. The present controversy concerns the three credits given on account of subscriptions to the Liberty Loans of 1918, aggregating $60,534.30 (an amount reduced, because of certain accounting adjustments, to $60,066.71). These credits were accepted by the Pennsylvania Railroad Company and entered in its general ledger in an account entitled "United States Government Liberty Loan Bonds Subscriptions by Em-

ployes." Some time in 1920 the Railroad Administration returned possession of the road to the Company, and, on October 8, 1923, an agreement was entered into between the Director General and the Company in which the former acknowledged payment by the latter of $90,-000,000.00 in full settlement of all claims of the Director General against the Company growing out of the possession of the Company's property by the United States during the period of federal control; this sum represented largely improvements and additions to the road and equipment made by the Railroad Administration during that period. On December 31, 1929, the Company wrote off the $60,066.71 item on its books to profit and loss account and thus absorbed the amount as a Company asset.

It is the theory of the Commonwealth that when the Pennsylvania Railroad Company received the credits in question it became obligated as a trustee of the moneys thereby represented to account therefor to the employes of the Railroad Administration from whose wages these sums had been deducted; that these employes did not receive either bonds or a return of their payments, and many more than seven years have elapsed during which they have remained unknown; therefore, that the Commonwealth is entitled to an escheat of this sum of $60,-066.71, which does not belong, and never did belong, to the Company. The Pennsylvania Railroad Company, on the other hand, takes the position that it was not entitled to these credits, their allowance being a mistake on the part of the Railroad Administration's accountants; that the Railroad Administration never demanded a rectification of this mistake and the settlement made on October 8, 1923, was a final one which effectually cancelled all claims of the Railroad Administration against the Company; that, accordingly, especially after the statute of limitations had intervened, the Company was justified in appropriating the money to its own use.

The Railroad Company admittedly did not deliver any bonds or make any return of instalment payments

to employes of the Railroad Administration who subscribed for bonds in 1918; if, therefore, the Commonwealth had shown that there was an obligation on the part of the Company as trustee to account to such subscribers, and that the latter did not receive satisfaction from the Railroad Administration itself, the essential facts necessary to justify an escheat would have been established. But the Commonwealth failed to prove either the obligation or the breach. When the Railroad Administration gave to the Railroad Company the credits aggregating $60,066.71, was there any agreement between them, express or implied, that the Company would, in consideration of such credits, relieve the Railroad Administration of its obligation to account to the subscribing employes of the Railroad Administration for the instalment payments represented by this sum and itself assume that obligation? There is no evidence of any such agreement. The giving of these credits may have been, as the Company claims, a sheer error on the part of the Railroad Administration, in which case the Commonwealth obviously would not be entitled to an escheat and only the Railroad Administration could have asserted a claim. But even were it to be held that the Company did, by accepting the credits, impliedly assume the position of a trustee of the moneys thereby represented and was bound to satisfy thereout the claims of the subscribers who had made the payments, there is no evidence on the record that there ever were any unsatisfied claimants—that is, that any subscribing employe of the Railroad Administration failed to receive from it, in performance of its obligation to him, either the bonds to which he was entitled or a cash return of the aggregate of his wage deductions. It is entirely consistent with the record that, notwithstanding its allowance to the Railroad Company of these credits, whether through "error" or otherwise, the Railroad Administration, during the period between August, 1918, when the last credit was given and 1920 when possession of the road was returned

to the Company, met all the claims of its employes who subscribed to the 1918 issues of bonds under its obligation to do so in accordance with their subscription contracts,—an obligation which would have continued regardless of any arrangement it might have made with the Company. In short, whatever the actualities of the situation may have been, the Commonwealth failed to produce any evidence to establish that there were subscribing employes to the 1918 bonds who were left unsatisfied by the Railroad Administration, and who, therefore, might conceivably have had some claim as beneficiaries or cestuis que trustent of the $60,066.71 and a right to pursue it against the Pennsylvania Railroad Company because of the credit allowed by the Railroad Administration to the Company in that amount.

It follows that the court below properly discharged the rule taken by the Commonwealth to show cause why an escheat should not be declared in its favor.

The order is affirmed; costs to be paid by the Commonwealth.