## Lamberton Estate.

Argued May 21, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

Ralph B. Umsted, with him N. L. Wymard, Deputy Attorneys General, and James H. Duff, Attorney General, for appellant.

Leon J. Obermayer, with him George B. Clothier and Edmonds, Obermayer & Rebmann, for appellee.

OPINION BY MR. JUSTICE LINN, June 29, 1945:

At the audit of the account of the executrix of Robert E. Lamberton, deceased, the Commonwealth claimed $19,912.99,[1] being money deposited by litigants with Sheriff Lamberton and refundable "to the payer thereof" pursuant to the Act of May 23, 1923, P. L. 347, 16 PS section 2662,[2] or otherwise distributable to litigants. The claim was based on section 7 of the Act of June 7, 1915, P. L. 878, as amended, 27 PS section 282; Fiscal Code of April 9, 1929, P. L. 743, 72 PS sections 1309 and 1310, and was made in the Orphans' Court pursuant to the Act of April 9, 1929, P. L. 343, Art. XIII, sec. 1314, 72 PS section 1314; Link's Estate, 319 Pa. 513, 180 A. 1. The claim was rejected by the learned court below on the ground that the Commonwealth had failed to prove it.

Mr. Lamberton was sheriff of Philadelphia County during the years 1920 to 1923, inclusive. He died August 22, 1941. The account of the executrix, which came on for audit November 10, 1943, shows an estate for

[1] The aggregate of 465 different items on Commonwealth's Exhibit No. 1.

[2] The Act now in effect is that of June 1, 1933, P. L. 1141, 16 PS section 2661(c).

distribution in excess of $200,000. The 49 dockets maintained in the sheriff's office during his term, recording relevant receipts and expenditures, disclosed that at the expiration of his term of office there were in his possession, as the learned auditing judge found, ". . . unclaimed and undistributed funds in the amount of $19,-912.99." The evidence supporting that finding of fact, made out a prima facie case requiring the court to grant the Commonwealth's application, unless the executrix showed that the amounts had been refunded.

Samuel Budin, a Deputy Sheriff during Sheriff Lamberton's term, described the practice prevailing in the sheriff's office as reflected in the dockets in evidence, and testified that after the sheriff's term expired, the dockets remained for some time in the sheriff's office and that distribution was made on checks signed and countersigned by Deputy Sheriff Myers, and by Mr. Lamberton. Asked how long that practice continued, he said, "I judge for about a year." Asked what became of claims for refund made after that year (1924) the witness said, "I think about a year after he left office when there were any claims made in the office we referred them directly to Judge Lamberton." He stated that although the dockets remained in the sheriff's office, Judge Lamberton had a complete list of the items. From the evidence of this witness, the court might find that some payments, in amounts not specified, were made; but, as the burden of showing payment was on the accountant, Mr. Budin's evidence is insufficient to find the amount refunded. The same thing is true of the hearsay evidence that, after 1924, some refunds in unspecified amounts, may have been made by Mr. Lamberton himself.

In reviewing the rejection of the claim by the learned court below, we may note the differences of view appearing in the adjudication and in the opinion subsequently filed by the court in banc dismissing the Commonwealth's exceptions. The learned court recognized, as we do, the high character and professional standing of

Judge Lamberton and his undoubted readiness to refund all the sums in question. We also recognize the accountant's difficulty in the circumstances in which she was required to account. On her behalf a statement was made part of the record to the effect that she had made a diligent search to find evidence on the subject and found none.[3]

The purpose of the legislation is to transfer to the Commonwealth the custody of the unclaimed money. This money, though lawfully in his custody, did not belong to Mr. Lamberton; it belonged to parties to the litigation specified on the dockets: compare *Com. v. Cunningham*, 337 Pa. 289, at p. 297. It is of no consequence in the case that the statute of limitation has run in favor of his estate and against the parties who paid, or are entitled to, the money. The Act under which the proceeding is brought, limits the Commonwealth's application to funds which have been unclaimed for seven years.

The learned auditing judge dismissed the claim on the ground of a presumption of payment. That defense is not available to the accountant because the facts will

---

[3] "If Mr. Umsted desires that the executrix be here to make a statement, I will be glad to have her come in, except to say that she has no knowledge about any of the facts in connection with this claim. When I heard the claim was to be made I personally made a diligent search both through these books and through all the records in the Mayor's office and in the Judge's office and in Mr. Lamberton's home, to see if I could find any records of check books, bank books, deposits, or transfers from one fund to another, indicating that any funds which the decedent may have had as Sheriff had been actually transferred to his personal account, but I was unable to find in any place any record of any transfer at any time of any funds which were presumably in the account of Robert E. Lamberton, Sheriff, actually transferred into his personal account. For that reason no accounting is offered to the Court in the account which is filed, and for that reason the executrix takes the position, so far as she now knows there are no funds in her hands which came to Robert E. Lamberton during the time he was Sheriff from 1919 to 1923. Mr. Umsted: I will accept the statement of Mrs. Lamberton's testimony as if she had so testified."

not support it; the ordinary period after which payment is presumed had not elapsed, and nothing has been shown to take the place of the missing years. The defense of laches is not supported by the facts. The statute did not permit the Commonwealth to proceed until after the moneys had been unclaimed for seven years, that is, until 1931. In 1938 the Commonwealth appointed an escheator, who applied to Court of Common Pleas No. 3 for an order of escheat. His petition and also an amended petition were dismissed by orders affirmed in *Rosenfeld's Appeal*, 337 Pa. 183, 10 A. 2d 570. In the course of that proceeding a brief was filed in this court under Rule 61, on behalf of Mr. Lamberton, appearing specially.

The order appealed from, made by the court in banc, states: "Since therefore, the Commonwealth did not discharge its burden of proof, it follows there was no error on the part of the Auditing Judge in dismissing the claim. The exceptions are dismissed." We must reject that conclusion. In the course of its discussion, the learned court said that the accountant ". . . is under a duty to account for only such assets of her decedent as she has been able to discover, collect, or reduce to possession. It is axiomatic that he who claims the executor should have accounted for more, or that the decedent once in his lifetime had in his possession property of the claimant, has the burden, as against the executor, of proving that the property was in the decedent's possession at the time of his death, and that it passed into the possession of, or should have been recovered by his personal representative. Here the statement of the executrix was accepted by the Commonwealth in lieu of her testimony to the effect that she made a diligent search, found no funds such as are here claimed, nor record indicating that any funds which decedent may have had as Sheriff had actually been transferred to his personal account.

"It may well be, as the Auditing Judge surmises, that during the eighteen years that elapsed from the time of

his leaving the Sheriff's office until his death, the funds were paid out by the decedent to the parties entitled. Be that as it may, where an executrix has not accounted for escheatable funds, and offers proof that she could find no evidence of the existence of such unpaid funds, after the decedent's death, the burden is on the Commonwealth to first prove that there were such funds in the possession of the decedent at the time of his death. In this aspect this case is similar to and in our opinion is ruled by *Pennsylvania Railroad Escheat Case,* 348 Pa. 317 (supra)."

It is of course true, as the court states, that it must appear that an accountant has or should have received property to be accounted for, but that fact has been shown by the proof that certain moneys were owing by accountant's testator, by virtue of his office as sheriff. In support of its conclusion that the Commonwealth had not shown that the accountant had not received the unrefunded money, the court referred to *Pennsylvania Railroad Escheat Case,* 348 Pa. 317, 35 A. 2d 58. The difference between the two cases is clear. The proof shows that the sheriff received the money; his executrix has his property, which, unless the sums in question have been refunded, includes the subject of the Commonwealth's application. In the *Pennsylvania Railroad Escheat Case,* it appeared that in the final settlement of accounts between the railroad company and the federal railroad administration, the railroad company was credited with an item which afterward became the subject of the Commonwealth's demand. It contended that the money was accumulated during the railroad administration's operation and represented an amount for which the railroad administration had agreed to deliver bonds to subscribing employes. But there was nothing in the record to show that, in the final settlement of their accounts, the railroad company received the credit in trust to satisfy any prior obligation incurred by the railroad administration; nor did it appear that there were any

subscribing employes whose claims had not been satisfied by the railroad administration while in charge of the railroad. The settlement of accounts between the railroad company and the railroad administration affords no basis for the conclusion of the Orphans' Court that the money which the statute required to be refunded by the testator had not passed from him, with his other property, into the possession of his executrix for accounting.

We were informed at the argument that the funds in question had been deposited in a Sheriff's account and that at some time, not definitely stated, after his term of office had expired, testator transferred the balance in the Sheriff's account to his personal account, and thereafter made payments from that. No explanation was given of the failure to show from the records of the bank in which this Sheriff's account was maintained, the amount of the balance to his credit, as sheriff, at the time it was transferred to his personal account. That record may enable the parties to ascertain how much of the balance appearing on the dockets on December 31, 1923, at the end of the sheriff's term, had been paid to the parties entitled prior to the transfer to the personal account and thus reduce the amount now payable into the state treasury. As it does not appear that such evidence is not available, we have concluded to remit the record for rehearing after such further investigation of the subject as the parties may be able to make.

The order dismissing the application of the Commonwealth is reversed; the record is remitted with leave to the parties, within a reasonable time to be fixed by the court below, to offer additional evidence to be considered, the claim of the Commonwealth to be allowed for all sums which the accountant cannot show to have been refunded; costs to be paid out of the balance for distribution.