## Leseman-Frederick Company, Appellant, *v.* Diebold et al.

Argued March 24, 1948. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Clyde P. Bailey,* with him *Dane Critchfield, Daniel J. Parent, Harry Alan Sherman* and *Bailey & Critchfield,* for appellant.

*T. F. Ryan,* with him *Joseph H. Bialas,* and *Bialas & Ryan,* for appellees.

PER CURIAM, April 12, 1948:

The bill of complaint alleges that plaintiff, Leseman-Fredrick Company, a corporation, was a creditor in 1927 of one Latoof Naffah in the amount of $10,595.83, and that Naffah was indebted also to other creditors, all the claims being secured by mechanics' liens on certain realty known as El Tower. It avers that a written agreement was executed by Naffah, City Deposit Bank, and a Creditors' Committee consisting of Messrs. Diebold, Moss, Bartley and White, three of whom are the defendants herein; (White died and his estate was settled and distributed before the institution of this suit). The agreement provided that Naffah should execute a bond

and mortgage in the sum of $285,326.47 on El Tower property, with the four members of the Creditors' Committee as the obligees and mortgagees therein, but with no personal liability of either Naffah or the Committee; this mortgage was to cover the sum of $185,326.47 owed by Naffah to the creditors represented by the Committee and an additional $100,000 to be advanced to Naffah by the Committee. The agreement further provided that the City Deposit Bank was to loan to the Committee this $100,000 to be advanced to Naffah; as security therefor the Committee was to assign to the Bank the $285,-326.47 mortgage. It is alleged that the Bank agreed that, in the event of any foreclosure or execution against El Tower, the Bank would bid at the sale up to the amount of $285,326.47 to protect its claim and the claims of the creditors represented by the Committee. Naffah, in 1928, conveyed El Tower to the Committee under and subject to all liens and encumbrances of record. In 1933 the Committee agreed to sell the furniture and fixtures in the property to the Bank for $7500, and also agreed, without consideration therefor, to execute and deliver to the Bank a deed for the realty itself. In 1934 the Committee executed and delivered to the Bank a bill of sale covering the furniture and fixtures, and a deed of the real estate to a nominee of the Bank, this conveyance being made under and subject to the mortgage of $285,326.47 then held by the Bank as security for its loan of $100,000. The Bank threupon issued execution on the mortgage and, at the sheriff's sale, bid in the property for an amount equal merely to the costs and taxes. Subsequently the Bank resold the realty for the sum of $140,000, free and clear of all encumbrances, to a corporation which it organized and owned. The bill avers that the Creditors' Committee took no action against the Bank to protect the plaintiff's interest as a creditor of Naffah. It alleges that plaintiff did not have knowledge of the conveyance of El Tower to a nominee of the Bank until 1941. It asserts that the Committee

violated the fiduciary duty which it owed to plaintiff and prays that defendants be surcharged in the amount of plaintiff's claim against Naffah, with interest thereon from the year 1927.

Defendants filed an answer raising preliminary objections to the bill. The answer asserts that it is apparent on the face of the bill that plaintiff has been guilty of laches, and that the facts alleged therein do not indicate any fiduciary duty on the part of defendants in connection with the alleged breach of agreement by the Bank. Other objections are stated but it is not necessary for present purposes to consider them.

The court below properly sustained the objections and dismissed the bill. Plaintiff is clearly guilty of gross laches in asserting its present claim. It complains of the action of the Creditors' Committee in conveying the equity in El Tower to the Bank in 1934 and in not bringing action against the Bank for its failure to bid in the property for the amount of $285,326.47 as it had allegedly agreed to do. The present bill was not filed until 1946. Laches apparent upon the face of the bill may be taken advantage of by the filing of preliminary objections: *Stimson v. Stimson*, 346 Pa. 68, 71, 72, 29 A. 2d 679, 681. An attempt is made to excuse the delay of twelve years in instituting these proceedings by claiming that plaintiff did not learn until 1941 of the 1934 conveyance, but there is no explanation as to why its ignorance was of such duration, nor any statement as to how it finally obtained its knowledge, in order to enable the court to determine whether it made reasonable efforts to ascertain the facts; a bare allegation of ignorance is not sufficient: *Kinter v. Commonwealth Trust Co.*, 274 Pa. 436, 442, 118 A. 392, 393, 394; *Stimson v. Stimson*, 346 Pa. 68, 72, 29 A. 2d 679, 681, 682. Plaintiff does not suggest any fraud, deception or concealment which might tend to excuse laches, as occurred, for example, in *Bailey v. Jacobs*, 325 Pa. 187, 201, 206, 189 A. 320, 327, 328, 329, 330. Cf. *Ebbert v. Plymouth Oil Co.*, 348 Pa. 129, 137,

138, 34 A. 2d 493, 497; *Naffah v. Diebold,* 349 Pa. 219, 221, 36 A. 2d 782, 783. Furthermore, one of the members of the Creditors' Committee has died and his estate has been distributed, so that liability for plaintiff's present claim, if there were any, would fall unfairly upon only the three surviving members of the Committee.

Wholly apart from the question of laches plaintiff's bill was properly dismissed because it does not set forth any such relationship of the Committee to plaintiff and the other creditors of Naffah as would impose upon it the responsibility of a fiduciary with respect to the transactions described in the bill. There is nothing therein to indicate how the Committee was appointed, what its functions were, or that it was under any duty to bring action against the Bank on behalf of the creditors if the Bank failed to bid up the property as agreed upon; the extent of the authority and contractual liability of the members of the Committee as representatives or agents of the creditors is not set forth. A copy of the 1927 agreement itself is not attached to the bill,—an omission possibly explained by the fact that an inspection of a copy of that same agreement attached to the bill of complaint in other proceedings in which the present plaintiff was an intervening party (Court of Common Pleas of Allegheny County, No. 2091, January Term, 1942) reveals that the individual creditors themselves, not the Creditors' Committee as is alleged in the bill, were, together with Naffah and the Bank, the parties to the agreement. As far as the conveyance of El Tower to the Bank in 1934 is concerned, it is sufficient to point out that plaintiff and the other creditors of Naffah were not in any way interested in the equity in the property beyond the $285,326.47 mortgage which covered their claims; moreover, since the public foreclosure sale of the mortgage did not realize enough to liquidate the Bank's loan of $100,000, much less the $285,326.47 mortgage, there was obviously no realizable value in the equity subject to that mortgage, so that its conveyance

to the Bank by the Creditors' Committe, even if, as here alleged, without consideration, could not, in any event, have caused any loss to plaintiff or the other creditors.

From every angle, therefore, it is clear that the court below was obliged to sustain the preliminary objections and dismiss the bill of complaint.

Decree affirmed; costs to be paid by plaintiff.