Stahl, Attorney General, Appellant, *v.* First
Pennsylvania Banking and Trust Company.

Argued November 28, 1962. Before BELL, C. J.,
MUSMANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

122

*Francis T. Anderson,* with him *John P. Walsh,* Special Assistant Attorney General, *Jack M. Cohen* and *Joseph H. Savitz,* Deputy Attorneys General, *Samuel B. Blaskey,* Special Counsel, and *David Stahl,* Attorney General, for appellant.

*Harry E. Sprogell,* with him *Saul, Ewing, Remick & Saul,* for appellee.

*Theodore Voorhees, Philip Price,* and *Dechert, Price & Rhoads,* for amicus curiae, under Rule 65.

*J. B. H. Carter, Ernest Scott,* and *Pepper, Hamilton & Scheetz,* for amicus curiae, under Rule 65.

OPINION BY MR. CHIEF JUSTICE BELL, June 4, 1963:

David Stahl, Attorney General of the Commonwealth, has appealed from a final Order of Court of Common Pleas No. 5 of Philadelphia County, which sustained preliminary objections and dismissed his petition for (1) discovery and an accounting and (2) for an order upon the appellee First Pennsylvania Banking and Trust Company (hereinafter sometimes referred to as Pennsylvania) directing it to pay certain monies into the State treasury without escheat.

This petition was filed by the Attorney General pursuant to the Act of May 16, 1919, P. L. 177, as amended, 27 P.S. §431 et seq. That Act provides that the Attorney General may petition the proper Court for an order on, inter alia, a person, bank or other corporation directing it to pay to the Commonwealth

money or property (together with interest thereon) which is escheatable under any other Act. Under the Act of 1919, any property which is made the subject of such an order is paid into the treasury of the Commonwealth and is appropriated by it and used for its own purposes. This is a temporary appropriation, not an actual and permanent escheat, since the *rightful owner*, i.e. any person legally entitled to such money (or the legal representatives thereof), can, at some future date, recover such property from the Commonwealth if he establishes his ownership or right thereto: *Alpern v. Girard Trust Corn Exchange Bank*, 403 Pa. 391, 170 A. 2d 87.

In this petition the Attorney General sought possession of money or property (a) allegedly in the possession of Pennsylvania, and (b) allegedly escheatable under the Act of June 7, 1915, P. L. 878, as amended, 27 P.S. §241 et seq. That Act provides for the escheat of certain property when, for the period of various fixed numbers of years, the rightful owner or his whereabouts are unknown, or when such rightful owner has not claimed the property sought to be escheated.

In his petition the Attorney General prayed that Pennsylvania pay into the State treasury without escheat a total sum of $4,693,797.26 and an order for a discovery and an accounting of other allegedly escheatable property from Pensylvania for the years 1900 to 1933, and from the Bank of North America and Trust Company (hereinafter referred to as North America) from 1900 to 1929.

Pennsylvania was incorporated, sub nomine Pennsylvania Company for Insurance on Lives and Granting Annuities, by Special Act of Assembly of March 10, 1812, and its charter was amended, also by Special Act of Assembly, on February 26, 1836. Pennsylvania has merged many times with numerous other banks and banks and trust companies, in all of which mergers

it was the surviving institution. One of these mergers was with North America on June 1, 1929. Under and after each of these mergers Pennsylvania took over the assets and assumed the liabilities of the merging institutions.

Petitioner alleges that Pennsylvania from 1900 to 1933, and North America between 1900 and 1929, deposited in their respective commercial departments or in accounts in their own names in other banks, *so-called uninvested funds,* viz., (a) those belonging to estates, trusts, guardianships, receiverships or individual accounts in which the banks acted as fiduciary or agent, and (b) those placed in the banks' possession by corporations (for which the bank acted as corporate trustee or agent) for the payment of the interest on bonds but not claimed by the bondholders when due. While appellant does not contend that such deposits were unlawful, he does contend that the interest and profits which were earned by the use of these deposits, over and above the interest which was paid out by the banks, (a) belongs to the rightful owners thereof, and (b) the banks should have paid or should have been surcharged therefor and (c) in the absence of such payments or surcharges the Commonwealth is entitled to escheat all these amounts.

It is a well recognized general rule that a trustee or fiduciary may not use trust property for his own benefit and if he does he is liable to a cestui que trust for profits made by him from the use of trust property. However, an exception to this general rule is recognized in the case of banks which under the decisional and statutory law of Pennsylvania are permitted to deposit trust funds as well as demand deposits in the commercial or savings department of their bank or in another bank, and while they may be liable for interest, they are not liable to the owner of such funds for profits made thereon by the bank: *Moore's Estate (No. 3),*

211 Pa. 348, 60 A. 991; Scott on Trusts, Vol. 2, Sec. 170.18, page 1249. See to the same effect, *Dick's Estate*, 183 Pa. 647, 39 A. 2; *Reid v. Reid (No. 2)*, 237 Pa. 176, 85 A. 85; *Jones Estate*, 400 Pa. 545, 559, 162 A. 2d 408; *Kaufmann's Estate*, 137 Pa. Superior Ct. 88, 93-94, 8 A. 2d 472.

The Attorney General states in his petition that he does not know and cannot aver the amount of money involved in any single transaction, nor can he supply the names of any trust or party involved in any particular transaction nor the pertinent dates relating to any such transaction, nor the names of the alleged creditors, but nevertheless avers that the funds which are escheatable from countless transactions amount (as above mentioned) to $4,693,797.26. He deduces this amount by deducting the total amount of interest paid by each bank on uninvested funds from the bank's total earnings on such deposits for the period covering approximately 30 years and claims that the difference was payable to each rightful owner and consequently was recoverable under this proceeding. Banks earn interest or profits by using the so-called uninvested funds in loans to bank customers and by investing these so-called uninvested funds in securities. The banks have always claimed that these profits or so-called excess interest belonged to them and they have never been held by any appellate Court in Pennsylvania to be escheatable. Nevertheless, the Attorney General, we repeat, contends that they were escheatable for the period from 1900 to 1933 and consequently could be recovered in the present action. The Attorney General therefore further petitioned and prayed for a discovery and an accounting by Pennsylvania as to all these innumerable transactions and an order directing Pennsylvania to pay into the State treasury this escheatable property and any additional escheatable funds that such accounting and discovery may disclose, plus interest and penalties.

The Court below determined that the petition of the Attorney General did not state a cause of action and for this reason dismissed it.

In considering appellant's petition in the light of appellee's preliminary objections, we apply, as did the Court below, the well established rule that preliminary objections (or pleadings in the nature thereof) admit as true all facts which are well and clearly pleaded, but not the pleader's conclusions or averments of law: *Bogash v. Elkins,* 405 Pa. 437, 176 A. 2d 677; *Ross v. Metropolitan Life Ins. Co.,* 403 Pa. 135, 169 A. 2d 74; *Dumont Television & Radio Corp. v. Franklin Electric Co.,* 397 Pa. 274, 154 A. 2d 585; *Erie v. Gulf Oil Corporation,* 395 Pa. 383, 150 A. 2d 351; *Silver v. Korr,* 392 Pa. 26, 139 A. 2d 552.

A recitation of the above mentioned facts and contentions makes it clear that this is nothing but a very expensive onerous and harassing fishing expedition for a school of mythical fish which expert government fishermen (who have been examining banks for the Department of Banking since 1895) have been unable to discover. Moreover, this extremely burdensome and costly expedition is not to be paid for by the fishermen (nor even by the stockholders when the various transactions and alleged escheats occurred years ago.); it is to be paid for by the present owners of the lake. It is very difficult to believe that any such fishing expedition which is so obviously unrealistic, unreasonable, oppressive and unjust, could ever have been intended by the Legislature, even though the language of the Act of 1915, supra, as to escheatable property and the provision for discovery is very broad.

While a corporation is not entitled to the same degree of protection against unlawful searches and seizures as is an individual, the law is clear that a corporation cannot be subjected to an unreasonable investigation: *United States v. Morton Salt Co.,* 338 U.S. 632,

652; *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186, 208; *Boyd v. United States,* 116 U.S. 616. The Pennsylvania authorities are to the same effect. Pa. R.C.P. 4011 provides: "No discovery or inspection shall be permitted which . . . (b) causes unreasonable annoyance, embarrassment, expense, or oppression to the deponent or to any person or party; . . . (e) would require the making of an unreasonable investigation by the deponent or any party or witness."

In *Annenberg v. Roberts,* 333 Pa. 203, 214, 2 A. 2d 612, the Court said: "The subpoenas show on their face that they contemplate an unreasonable search and seizure. They violate the principle which we announced in American Car & Foundry Co. v. Alexandria Water Co., 221 Pa. 529, where we held that a subpoena duces tecum could not properly be issued to bring in a mass of books and papers in order that there might be a search through them to gather evidence. . ."

In *American Car & Foundry Co. v. Alexandria Water Co.,* the Court said (page 535): " 'The courts uniformly decline to grant an application for production and inspection where it is merely for the purpose of a fishing examination, as where it is made to discover whether or not there is evidence contained in the documents which will be useful to the applicant, or for the purpose of determining whether he has a cause of action, or a defense, or in anticipation of a defense, or to gratify curiosity.' " Cf. also *Einhorn v. Philadelphia Electric Company,* 410 Pa. 630, 190 A. 2d 569.

However, for reasons which will hereinafter be discussed, it is not now necessary to decide whether these funds are recoverable under the Act of 1919 or escheatable under the Act of 1915, and if so, whether the Legislature intended such broad discovery as is claimed by the appellant.

The Court below found appellant guilty of laches. We believe that the petition should have been dismissed on this ground.

The law is well settled that a complaint or petition will be dismissed by the Court on preliminary objections if laches clearly appears as here in the petition itself: *Canonsburg Borough School District v. North Strabane Township School District*, 409 Pa. 550, 187 A. 2d 164; *Neizer v. Schuylkill Township School District*, 384 Pa. 323, 121 A. 2d 93; *Rush v. Butler Fair & Agr. Assn.*, 391 Pa. 181, 186, 137 A. 2d 245; *Silver v. Korr*, 392 Pa. 26, 139 A. 2d 552; *Bowie Coal Company Petition*, 368 Pa. 102, 82 A. 2d 24; *Hornsby v. Lohmeyer*, 364 Pa. 271, 72 A. 2d 294; *Leseman-Frederick Company v. Diebold*, 359 Pa. 89, 92, 58 A. 2d 140; *Stimson v. Stimson*, 346 Pa. 68, 71, 29 A. 2d 679.

The essence of any claim of laches is an estoppel as a result of prejudicial delay: *Thompson v. Curwensville Water Co.*, 400 Pa. 380, 162 A. 2d 198; *Esso Standard Oil Co. v. Taylor*, 399 Pa. 324, 159 A. 2d 692; *Com. ex rel. Storb v. Schroll*, 398 Pa. 354, 157 A. 2d 179; *Silver v. Korr*, 392 Pa. 26, 139 A. 2d 552; *Grote Trust*, 390 Pa. 261, 135 A. 2d 383; *Com. ex rel. Margiotti v. Union Traction Co.*, 327 Pa. 497, 194 A. 661; *McGrann v. Allen*, 291 Pa. 574, 140 A. 552.

In *Silver v. Korr*, the Court said (page 29): "Laches can be taken advantage of by demurrer or by preliminary objections without requiring a plea or answer to bring it to the notice of the Court; however, in such a case, the laches must be clearly apparent from the bill or petition itself: Bowie Coal Company Petition, 368 Pa. 102, 82 A. 2d 24, and cases cited therein.

"In First National Bank v. Lytle Coal Co., 332 Pa. 394, 396, 3 A. 2d 350, the Court said: ' "Equity will not lend its aid to one who has slept upon his rights until the original transaction is obscured by lapse of years and death of parties: Kinter v. Commonwealth Trust Co., 274 Pa. 436, . . ." ' "

Furthermore, the defense of laches may be asserted against the Commonwealth: *Com. ex rel. Storb v.*

*Schroll,* 398 Pa. 354, 157 A. 2d 179; *Com. ex rel. Coghlan v. Beaver Falls Council,* 355 Pa. 164, 49 A. 2d 365; *Com. ex rel. Margiotti v. Union Traction Co.,* 327 Pa. 497, 194 A. 661; *Com. v. Bala & Bryn Mawr Turnpike Co.,* 153 Pa. 47, 25 A. 1105.

In *Com. ex rel. Storb v. Schroll,* supra, the Court said (pages 357-358): "We have recently stated in Grote Trust, 390 Pa. 261, 269, 270, 135 A. 2d 383: 'Laches arises when a defendant's position or rights are so prejudiced by length of time and inexcusable delay, plus attendant facts and circumstances, that it would be an injustice to permit presently the assertion of a claim against him.' See also: Silver v. Korr, 392 Pa. 26, 30, 139 A. 2d 552. In determining the propriety of the application of the doctrine of laches to the instant situation two questions must be considered: (1) does laches run against the Commonwealth?; (2) if it does, was the Commonwealth guilty of laches under the present circumstances?

"The landmark case in Pennsylvania on the subject of whether laches may be imputed to the Commonwealth is Commonwealth v. Bala and Bryn Mawr Turnpike Company, 153 Pa. 47, 53, 55, 25 A. 1105, a quo warranto proceeding. Therein, Mr. Chief Justice PAXSON, after reviewing the authorities, concluded: 'Were the complainant here a private individual we would not hesitate to say that his laches was a bar to this proceeding. Is the commonwealth in any better position? We think not. It is true, the statute of limitations does not run against the commonwealth. But this is not a question of the statute of limitations. It is a question of laches, and *laches may be imputed to the commonwealth as well as to an individual.'* (Emphasis supplied) In Commonwealth ex rel. Coghlan, District Attorney v. Beaver Falls Council, 355 Pa. 164, 169, 49 A. 2d 365, this Court said: 'Laches may, under some circumstances, be imputed to the Commonwealth as

well as to individuals. . .'. See also: Bradford v. N. Y. & Penna. Telephone & Telegraph Co., 206 Pa. 582, 586, 56 A. 41; Bailey's Estate, 241 Pa. 230, 232, 88 A. 428; Pittsburgh Railways Co. et al. v. Borough of Carrick et al., 259 Pa. 333, 339, 103 A. 106; Pittsburgh v. Pittsburgh & W. Virginia Ry. et al., 283 Pa. 196, 199, 200, 128 A. 827. In Bradford, supra, we stated: 'A stronger case of delay or acquiescence is necessary to prevent equitable relief when sought for by the state than when a mere private right is involved; but the doctrine is applied against the public in a proceeding by the attorney general: . . .' "

It is clear that the present action, whether successful or unsuccessful would be not only unreasonable but also highly prejudicial to Pennsylvania and its present stockholders. If there were funds—to which cestui que trustent or trust depositors or corporations or former bondholders or creditors were entitled during the years between 1900 and 1933—which were erroneously and unlawfully appropriated as bank income, such sums should have been set aside in the reserve account of the respective banks, or deducted in determining and paying the dividends paid to persons owning stock in those years, and this "escheatable" liability should have been taken into account in computing the book values which are (and were) so important and material in an exchange of shares of stock in mergers. The stockholders today are not the bank stockholders in the period 1900 to 1933. Consequently, if the petitioner should be successful, today's stockholders would be mulcted to discharge obligations which, if paid when due, would have reduced the dividends of prior stockholders and materially changed many mergers.

In all the numerous mergers in which Pennsylvania was involved in the 1900 to 1933 period, the stockholders of each merging institution received stock of Pennsylvania in exchange for their stock holdings on

the basis of the then ratio between the net assets of the merging institution and the net assets of Pennsylvania. Such stock distributions to shareholders of merging institutions have been made without any consideration of the possible existence of a huge contingent liability by Pennsylvania to alleged rightful owners (and consequently to the Commonwealth) of over $4,600,000 which the Attorney General is now attempting to establish and recover. Each of such mergers had to be and was approved by the Department of Banking of the Commonwealth of Pennsylvania. It seems strange that if any such enormous funds were due or *if any such contingent liability existed,* the numerous mergers of Pennsylvania would have been approved by the Banking Department without claim or question.

Since the enactment of the Act of June 8, 1891, P. L. 217 (creating the Department of Banking), the Department of Banking, through its examiners, has had unlimited auditing, investigating, and inquisitorial powers in respect to every state bank in the State. It is the duty of the competent and vigilant examiners of the Banking Department to ferret out possible contingent liabilities of banks and to call them to the attention of the officers and directors of such institutions and to the officials of the Banking Department of the Commonwealth of Pennsylvania. The Department has absolute power to note, report and value every asset and every liability, and to require correction of the appraised or carried value of each and every asset and each and every liability and each and every claim, as well as every situation which creates or might create a contingent liability or improperly reflects the condition of the bank, or may affect the safe and sound conduct of the bank in the interest of its stockholders, creditors and the general public. See Art. I, §14 of the Banking Code, Act of May 15, 1933, P. L. 624,

as amended, 7 P.S. §819-14; *Dauphin Deposit Tr. Co. v. Myers,* 401 Pa. 230, 241, 164 A. 2d 86; *Delaware County Nat. Bank v. Campbell,* 378 Pa. 311, 106 A. 2d 416. It is therefore clear that appellant has had or could have had available to him as much information as appellee has in these matters.*

To summarize: It is crystal clear from the face of the petition that if the prayer of the appellant were granted, Pennsylvania and its present stockholders would be very greatly prejudiced by petitioner's long and unexplained and unjustifiable delay in making these claims, and that, as the lower Court found, appellant was guilty of laches.

*Alpern v. Girard Trust Corn Exchange Bank,* 403 Pa. 391, 393, 170 A. 2d 87, which is relied upon by appellant is inapposite; that case was decided solely on procedural (jurisdictional) grounds and the merits of any questions herein raised were not decided.

---

* The preliminary objections filed by appellee not only challenge petitioner's right to recover anything but such demurrer is also a speaking demurrer. Among the facts therein averred were these:

(a) That the essential records of North America cannot now be found despite the most diligent search and are, therefore, no longer available for appellee's use in this action;

(b) That every year since the beginning of the period covered by the petition the Commonwealth has accepted capital stock taxes from appellee and North America on the basis of statements of assets and liabilities which never included the colossal liability (or any part thereof) appellant is herein attempting to establish; and

(c) That appellee and North America have, since 1913, paid Federal income taxes (which are not now recoverable) on profits which the Commonwealth now seeks to appropriate.

Because these alleged facts reach us through a speaking demurrer we cannot accept them as established facts, but if they were established at trial, the prejudice to appellee resulting from appellant's long delay would be even more glaring.

We have considered all of appellant's contentions but find no merit in any of them. We have likewise considered all of appellee's contentions, including its contention that the petition of the Attorney General did not state a cause of action (see *Pennsylvania R.R. Co. Escheat Case,* 348 Pa. 317, 35 A. 2d 58), but deem further analysis or discussion unnecessary.

Judgment affirmed, costs to be paid by appellant.

Mr. Justice BENJAMIN R. JONES and Mr. Justice EAGEN concur in the result.

---

DISSENTING OPINION BY MR. JUSTICE COHEN:

After devoting nearly half of its opinion to dicta concerning the question of whether the petition states a cause of action, the majority then abandons that ground and bases its decision solely on the ground of laches—a matter not decided by the court below and only mentioned in passing by the parties on this appeal. The majority's observations and innuendoes as to whether these funds are escheatable will serve therefore only to confuse future litigants and to cause this Court unnecessary problems when the issue is again presented. I must respectfully disassociate myself from such judicial behavior.

As for the question of laches, I disagree with the majority that the issue can be decided on the basis of appellee's preliminary objections. We have consistently held—as the majority recognizes—that laches can be raised by preliminary objections only where it clearly appears on the *face of the petition.* See, e.g., *Bowie Coal Company Petition,* 368 Pa. 102, 108, 82 A. 2d 24, 27 (1951). But the allegations of prejudice upon which the majority relies—payment of past dividends and mergers based on these funds—do *not* appear in the petition but are mentioned for the first time in

the preliminary objection itself. Since these factual assertions are not admitted by appellant, we have, to use the majority's term, "a speaking demurrer" and consequently the defense of laches has been improperly raised.

Moreover, as we stated in *Rush v. Butler Fair & Agricultural Association*, 391 Pa. 181, 186-87, 137 A. 2d 245, 248 (1958), "usually the question of laches can be determined only after the court has had an opportunity to appraise the evidence and so determine whether a valid reason exists for the delay in bringing suit." Consequently, even if the factual assertions of prejudice prove to be true, appellant should be given the opportunity to explain and defend its actions.

Accordingly, I dissent.