**Cain Estate**

*John J. King, Jr.,* for executor.

*Lawrence Barth, Deputy Attorney General,* for Commonwealth.

*Richard K. Stevens,* for Archdiocese of Philadelphia.

deFURIA, *A.J.,* January 24, 1980—Decedent, Anna A. Cain, died on July 21, 1977, testate, having been a resident and domiciliary of Delaware County, Pa. On August 11, 1977 letters testamentary were granted unto Joseph F. McCarthy, the executor named in decedent's will dated September 9, 1972, the validity of which has been questioned in the subject proceedings. Appropriate notice, through advertisement of the grant of letters, was completed by September 2, 1977. No appeal was

taken from the decree of the Register of Wills admitting the aforesaid will dated September 9, 1972 to probate within one year following the register's decree.

On April 25, 1979, approximately 20 months after the date of the register's decree, the Attorney General of the Commonwealth of Pennsylvania, as parens patriae for charities, filed an appeal from probate protesting the decision of the register in admitting the aforesaid will dated September 9, 1972 to probate and in granting letters testamentary thereon. Preliminary objections have been filed on behalf of the executor as proponent of the aforesaid will. Subsequently, two amendments were filed relative to the appeal from probate. Moreover, the court has heard oral arguments by counsel for the respective parties, and briefs have been submitted on their behalf for the court's consideration. The matter is now ripe for determination.

The aforesaid will dated September 9, 1972 provides for the payment of cash bequests to various named individuals, and, in addition, directs that the residuary estate, including property over which decedent possessed a power of appointment, be given, absolutely, to decedent's nephew, Joseph F. McCarthy. The court has been advised that decedent's probate estate aggregates approximately $50,000 and that the appointive estate approximates $100,000.

In the appeal from probate, as amended, the Attorney General alleges that the aforesaid will dated September 9, 1972 is invalid for various reasons, viz., that from June, 1968 until her death, decedent was physically and mentally infirm, and, thus, without the ability to evaluate the nature of any

writing presented to her for execution; that decedent was mentally incompetent at the time of the alleged execution by mark of the aforesaid will; that the proponent, Joseph F. McCarthy, who is named in the said will as executor, residuary beneficiary, and as beneficiary of all property subject to decedent's power of appointment, was a most frequent visitor to decedent, conducted her financial affairs, and established a confidential relationship with her; that the said proponent prepared or procured the preparation of the aforesaid will, which substantially altered the estate plan of decedent (relative to a prior will, hereinafter discussed) and the donor of the appointive estate, to his own benefit by the use of undue influence; that decedent had made certain "undertakings" with the donor of the appointive estate relative to the disposition thereof to charities; that the aforesaid will was executed by mark whereas certain writings, both before and after September 9, 1972, bore the signature of decedent; and that, alternatively, the mark on the said will was not made by decedent, and, thus, that there was fraud in the execution of the aforesaid will. Further, the Attorney General alleges that decedent executed a prior will dated April 16, 1967 a copy of which is attached to the record papers, wherein decedent bequeathed cash legacies to the various parties named therein, appointed one-half of the appointive estate to the Roman Catholic Archdiocese of Philadelphia, appointed the remaining one-half to the appointive estate to the Sisters of St. Joseph, and devised and bequeathed the residue, in equal shares, to ten named residuary beneficiaries (one of which was Joseph F. McCarthy).

As aforesaid, preliminary objections have been filed to the appeal from probate. One of the prelimi-

nary objections concerns the demand for additional specificity relative to the allegations of undue influence, duress, and constraint allegedly practiced on decedent. This objection, in the judgment of the court, has been resolved through the filing of two amendments to the appeal from probate, the essential averments of which have been incorporated in the summary of the allegations hereinabove set forth. The remaining preliminary objections are discussed below; for the reasons which hereinafter appear, it is the conclusion of this court that the preliminary objections must be dismissed.

First, and most significantly, the proponent contends that the Attorney General of the Commonwealth of Pennsylvania, as parens patriae for charities, is barred from filing the instant appeal from probate, as amended, since section 908 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S.A. §908, limits the right of appeal to one year from the date of the decree of probate. Section 908(a) of the code provides as follows:

"Section 908. Appeals

"(a) When allowed. Any party in interest who is aggrieved by a decree of the register, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom to the court within one year of the decree: Provided, That the executor designated in an instrument shall not by virtue of such designation be deemed a party in interest who may appeal from a decree refusing probate of it. The court, upon petition of a party in interest, may limit the time for appeal to three months."[1]

---

1. See also section 3133(b) of the code which provides that the probate of a will shall be conclusive as to all property, real or personal, devised or bequeathed by it unless an appeal is taken from probate as provided in section 908.

In the instant matter, the Attorney General admits that the appeal was filed more than one year after the Register's decree. However, the Attorney General suggests that the limitational provisions of section 908 of the code, being in the nature of a statute of limitations, do not run against the sovereign where, as here the Attorney General is acting on behalf of the people of the Commonwealth of Pennsylvania in a governmental rather than a proprietary capacity. Further, the Attorney General suggests that the circumstances surrounding the execution of the will, dated September 9, 1972, as alleged in the appeal from probate, as amended, and its subsequent probate, constitute fraud, and, consequently, toll any limitation in the instant matter. The court concurs in both regards.

With regard to the latter issue, in those instances involving private challenges, analogous case authority indicates that the limitational period is inapplicable in the event of fraud, an after-discovered will, an important omission where the Register's decree is uncertain, or where there is substantial equitable reason for not applying it. See Culbertson's Estate, 301 Pa. 438, 152 Atl. 540 (1930); Keiper Will, 8 Fiduc. Rep. 647 (1958); Rockett Will, 348 Pa. 445, 35 A. 2d 303 (1944); and Gallagher Estate, 485 Pa. 62, 400 A. 2d 1312 (1979). In the instant matter, the alleged circumstances relating to fraud, the fact that the Attorney General, as parens patriae, acts on behalf of all of the people of the Commonwealth, the indication that the Attorney General, without regard to notice by publication, was not notified of his possible interest in this matter until November, 1978 (more than one year after decedent had died), the presence of a prior will which made substantial bequests to charities, the absence of laches or estoppel, and the lack of any

change of position, prejudice or conveyance to a third party, dictate and justify the conclusion that the time limitations of section 908 are here inapplicable.[2] For these reasons alone, the preliminary objections must be dismissed. Nevertheless, the court wishes to address the remaining issues presented for determination.

With regard to the former issue, viz., whether the limitational provisions of section 908 of the code are applicable in the instant matter, a case of first impression is apparently presented. No Pennsylvania or other authority has been cited which directly governs this issue. However, analogous case authority leads this court to the conclusion that, under the circumstances here present, the time constraints of section 908 of the code are inapplicable.

Generally, unless expressly provided to the contrary in the statute, a statute of limitations does not run against the sovereign acting in a *governmental* capacity. See, inter alia, Com. v. Musser Forests, Inc., 394 Pa. 205, 146 A. 2d 714 (1958); Lamberton Estate, 352 Pa. 531, 43 A. 2d 94 (1945); and Erny's Estate, 337 Pa. 542, 12 A. 2d 333 (1940). Conversely, a statute of limitations does apply to the sovereign when it is operating in a *proprietary,* rather than a governmental, capacity: Philadelphia v. Holmes Elec. Protective Co., 335 Pa. 273, 6 A. 2d 884 (1939). The reasons for exempting the sovereign from statutes of limitations were set forth in U.S. v. Nashville Chattanooga & St. L. Railway, 118 U.S. 120 (1886), and U.S. v. Gera, 409 F. 2d 117 (3d Cir. 1969), wherein it is held that public policy

---

2. The court notes that the appeal from probate as aforesaid was filed within two years of the register's decree, and that, as recently as July of 1976, the appeal would have been timely under the prior provisions of section 908.

protects the people from loss caused by the dilatory conduct of its officials. Of course, the court is not unmindful of the fact that a statute of limitations may apply to subdivisions of the Commonwealth, as well as to certain of its agencies, such as the Pennsylvania Turnpike Commission (see Pa. Turnpike Commission v. Atlantic Richfield Co., 31 Pa. Commonwealth Ct 212, 375 A. 2d 890 (1977)). However, the General State Authority has been held to be a sufficient integral arm of the Commonwealth so as not to be so restricted: General State Authority v. Ewing, 29 Pa. Commonwealth Ct. 523, 371 A. 2d 1044 (1977).

In the instant matter, this court concludes that the Attorney General, as paren patriae for charities, is functioning as an integral arm of the sovereign, in its governmental capacity on behalf of the people of the Commonwealth, particularly those who might be benefited by the alleged charitable intent of decedent and the donor of the appointive estate if it is ultimately determined that the will of April 16, 1967 is effective, based on the allegations of the appeal from probate, as amended. Although the nominal beneficiaries of the Attorney General's action, if successful, would be the Archdiocese of Philadelphia, the Sisters of St. Joseph, and other private charitable organizations, their activities, nevertheless, concern the general welfare of the people of Pennsylvania who would benefit therefrom. Thus, the application of the basic principle which exempts the sovereign from a statute of limitations, viz., that the public should not suffer from the delays of its officials, is warranted in the subject matter.

The proponent contends that the time limitation set forth in section 908 is more than a normal statute of limitations, viz., that it is an evidentiary rule

which is conclusive on all affected property and parties in interest associated with the will in question, citing Cochran v. Young, 104 Pa. 333 (1884), and other case authority to this effect. None of these decisions, however, were concerned with the specific issue herein presented for determination and, for this reason, these decisions do not govern the instant appeal. Nor does this court perceive any significant distinction, under the alleged facts and circumstances here presented, between a statute of limitations and a "conclusive" decree of probate, if any.

In either event, the aforesaid public policy which exempts the sovereign (in those instances which involve the benefit of the people of the Commonwealth) is the overriding consideration. Nor does this court perceive any impact on this conclusion by virtue of the abrogation of the doctrine of sovereign immunity (exemplified by Mayle v. Pa. Dept. of Highways, 479 Pa. 384, 388 A. 2d 709 (1978)); on the contrary, this decision is consonant with that which is herein achieved, in that, in both instances, the interests of the people of the Commonwealth are being protected.

Second, the proponent contends that the Attorney General, as parens patriae for charities, has no standing to appeal from the probate of the subject will. In support of this contention it is argued that under the earlier will of decedent dated April 16, 1967 no trust is established (since outright distributions were therein provided) and the gifts contained therein were not gifts to charities (since, allegedly, the gifts therein were to religious organizations). These contentions are without merit.

It is the conclusion of this court that the Attorney General's interest, as parens patriae for charities, is

in all charitable organizations, not merely in charitable trusts. His interest in such organizations is to insure that they promote the well-being of the people of the Commonwealth; the precise legal form under which a charitable entity holds or receives its property or conducts its affairs is immaterial. In Pruner Estate,3 90 Pa. 529, 532, 136 A. 2d 107 (1957), the court stated:

"The responsibility for public supervision traditionally has been delegated to the attorney general to be performed as an exercise of his parens patriae powers. . . . These are the ancient powers of guardianship over persons under disability and of protectorship of the public interest, which originally were held by the Crown of England as the 'father of the country,' 3 Blackstone, Commentaries 47, Fontain v. Ravenell, 58 U.S. (17 How.) 369 (1855), and which as part of the common law devolved upon the states and federal government . . . Specifically, these powers permitted the sovereign, wherever necessary, to see to the proper establishment of charities through his officer, the attorney general, and to exercise supervisory jurisdiction over all charitable trusts. 3 Blackstone, Commentaries, 427. . ."

Moreover, the court's attention has been directed to Garrison Estate, 391 Pa. 234, 137 A. 2d 321 (1958), wherein the court reiterated the statement hereinabove quoted. Further, the Supreme Court of Pennsylvania has expressly recognized the interest of the Attorney General in charitable bequests as well as charitable trusts through Pa.O.C. Rule 5.5 which provides, in pertinent part: "In every proceeding in the Orphans' Court involving or affecting a charitable interest with the exception

hereinafter set forth, at least fifteen days advance written notice thereof shall be given to the Attorney General of the Commonwealth of Pennsylvania. . ."

The exception reads: "Unless the Orphans' Court directs otherwise by local rule . . ., no notice to the Attorney General or his designated deputy shall be required with respect to a pecuniary legacy to a charity in the amount of $25,000 or less which has been or will be paid in full."

It is significant to note, pursuant to the comment of the committee (which follows Rule 5.5) that the purpose of the $25,000 minimum has the purpose of relieving the Attorney General from the burden of supervising relatively small bequests to charities. In the instant case, the appointive property over which decedent's 1967 will executed a power of appointment approximates $100,000 in value.

This court further concludes that the religious organizations named as beneficiaries in decedent's 1967 will are "charities" within the intendment of both statutory and decisional law of the Commonwealth. Section 6101 of the Probate, Estates and Fiduciaries Code, 20 Pa.C.S.A. §6101, defines "charity" or "charitable purposes" to include, inter alia, the ". . . advancement of religion . . . and other purposes the accomplishment of which is beneficial to the community." See also Dettra Will, 13 Fiduc. Rep. 227 (1963), wherein it was held that the Attorney General was a proper party in interest who could appeal from the probate of a 1961 will, it being noted, inter alia, that the Baptist Home was a beneficiary of a prior (1930) will of decedent, and that the Commonwealth sought to set aside the later writing on the grounds of lack of testamentary capacity and undue influence.

Third, the proponent contends that the action of the Attorney General, as parens patriae for charities, is in the instant matter violative of the restrictions contained in the Pcnnsylvania and United States Censtitutions respecting the estalg lishment of a religion or prohibiting the free exercise thereof. This contention is also without merit. The discussion hereinabove set forth (relating to standing) is a partial response to this contention. In addition, it is clear that the right of religious organizations to the protection of their property is at least as great as that enjoyed by private citizens; see Cavill Estate, 459 Pa. 411, 329 A. 2d 503 (1974), wherein the "30 day rule" was eliminated by virtue of the equal protection clause of the United States Constitution. In effect, the proponent is equating the appropriation of public money or other property to religious use, on one hand, with the public protection of the right of religious organizations, and the persons to be benefited therefrom, to enjoy property bequeathed by a decedent, on the other hand. The distinction is patent. Moreover, the cases cited by counsel for the proponent relating to this issue do not herein govern by virtue of legal and factual differences.

Accordingly, the court enters the following

## DECREE

And now, January 24, 1980, upon consideration of the preliminary objections filed in this case, the record and briefs submitted by counsel for the respective parties, and after argument, it is ordered, adjudged, and decreed that the preliminary objections to the appeal from probate (as later amended), filed on behalf of Joseph F. McCarthy, be and the same are herewith dismissed.