## Strohecker v. Commonwealth

*Todd A. Hoover,* for petitioner.
*Philip L. Zulli,* for respondent.

DOWLING, *J.,* September 12, 1988 —
*A horse, a horse, my kingdom for a horse.*[1]
Once again[2] we have before us a license suspen-

---

1. Richard III, Act 5, Scene 5.
2. In *Commonwealth v. Campbell,* 108 Dauphin Rep. 71 (1987), this court held that a police officer's one-year delay in

sion appeal wherein the motorist complains that the Department of Transportation's delay in sending him a notice of revocation prejudiced him because he was led to believe his license would not be revoked and that in the interim, he changed his circumstances in reliance thereon. For the reasons that follow, we will sustain the appeal.

Petitioner Strohecker concedes that he was convicted of the requisite number of offenses within a five-year period to warrant habitual offender status under section 1542 of the Vehicle Code. 75 Pa.C.S. §1542. The final triggering offense occurred on October 17, 1986 when Strohecker was cited for fleeing or attempting to elude a police officer.[3] A certified photocopy of this citation was admitted into evidence, the reverse side of which reveals the following disposition:[4]

| Adjudication | | Sentence |
|---|---|---|
| Paid Fine & Costs | 1 | Date of Conviction _____ |
| | | X Paid in Full 9-27-87 |

As indicated on the form, the date of conviction was omitted by the district justice. Strohecker testi-

sending a "Report of Refusal" to the Department of Transportation was chargeable to the department and, having found sufficient prejudice, we sustained the appeal. Though *Campbell* is currently pending in Commonwealth Court, it would appear that the recent decision of *Commonwealth v. Maguire*, 114 Pa.Commw. 581, 539 A.2d 484 (1988) is dispositive. In *Maguire*, the court, without discussing the implications raised in *Campbell*, summarily held that the department "is not accountable for a local police department's delay in mailing the 'Report of Refusal.'" *Id.* at 583, 539 A.2d at 485.

3. 75 Pa.C.S. §3733.

4. For the full text of the dispositional section of a standard traffic citation form, see *Weaver v. Bureau of Driver Licensing*, 108 Dauphin Rep. 286, 288 (1988).

fied, however, that he was found guilty by the magistrate on November 5, 1986. Apparently there has been some confusion among district justices as to when a person is "convicted" when payment of the fine is to be made in installments. *Commonwealth, Department of Transportation v. Russo,* 96 Pa. Commw. 187, 506 A.2d 1349 (1986) makes it clear that a conviction occurs the day the fine is imposed, not when it is finally collected. Thus, even though District Justice Williams did not certify the conviction to the department until September 27, 1987, Strohecker was in fact convicted on November 5, 1986.

The delay between November 1986 and September 1987, some 10 months and 23 days, is not, however, chargeable to the department. In *Commonwealth, Department of Transportation, Bureau of Driving Licensing v. Georgiadis,* 116 Pa. Commw. 563, 542 A.2d 225 (1988), the court reaffirmed its prior holding that "delay cannot be chargeable to [the department] before the department is in receipt of the certification of conviction," notwithstanding a district justice's failure to comply with the District Justices Office Procedures Manual. 116 Pa. Commw. at 565, 542 A.2d at 226.

Here, the department received the certification of conviction on or about September 28, 1987, but did not notify petitioner that his license was being revoked until March 9, 1988, a period of five months and nine days. In the meantime, Strohecker enrolled in the MTA Truck Driving School in February 1988 and spent approximately $4,000 on tuition and costs. He is currently employed as a truck driver at a location some 20 miles from his residence. He claims that these circumstances warrant relief from the department's revocation of his license for five

years. We agree. The law regarding his claim is well-established:

"The common pleas court may reverse a suspension where the licensee shows that an unreasonable delay *chargeable to DOT* caused him to believe his privileges would not be impaired *and* to change his circumstances to his detriment." *Commonwealth, Department of Transportation, Bureau of Traffic Safety v. Maguire,* 114 Pa. Commw. 581, 539 A.2d 484, 485 (1988) (emphasis in original) (citation omitted). What constitutes "unreasonable delay" depends on the circumstances of each case, although no specific criteria have been delineated in any of the opinions that have dealt with the issue. *Lemley v. Commonwealth, Department of Transportation,* 97 Pa. Commw. 469, 473, 509 A.2d 1380, 1382 (1986). In *Commonwealth, Bureau of Traffic Safety v. Keller,* 48 Pa. Commw. 457, 410 A.2d 1288 (1980), the court declared that a seven-month delay was not per se unreasonable. We hesitate to say the *Keller* court *held* that it was not unreasonable because the opinion reveals that the motorist "failed to present any evidence whatsoever as to any prejudice he had suffered." *Id.* at 459, 410 A.2d at 1289. Strictly speaking, since the motorist must establish both delay *and* prejudice, the court's views with respect to a seven-month delay could be considered dicta. *Stahl v. First Pennsylvania Banking & Trust Co.,* 411 Pa. 121, 191 A.2d 386 (1963) (Cohen, *J.,* dissenting).

Strohecker argues by analogy to section 1535 of the code, 75 Pa.C.S. §1535, which mandates that unless the department mails notices within six months of the assessment of points, the assessment is null and void. Similar arguments were presented in *Keller, supra* and in *Horner v. Commonwealth, Department of Transportation,* 59 Pa. Commw.

519, 521, 430 A.2d 387, 388 (1981) and were rejected. However, in each of those cases, no evidence of prejudice was presented, and as noted, the court's discussion of delay can be considered dicta.

There are few reported Commonwealth Court opinions in which the motorist had presented evidence on both delay and prejudice such that the court was required to engage in a weighing process of the variables that enter into the decision. Most of the opinions address the question of whether the delay was chargeable to the department or whether the delay was unreasonable. Indeed, we have found only two reported cases wherein the motorist was successful on appeal. In *Hosek, supra,* there was a 16-month delay, the purchase of automobile insurance and a change of employment requiring a license. In *Commonwealth, Department of Transportation, Bureau of Traffic Safety v. Rutkowski,* 46 Pa. Commw. 64, 406 A.2d 248 (1979), there was a delay of one year and one week coupled with the motorist's testimony that he could have taken employment close to home to avoid a transportation problem, and that in reliance on the administrative delay, he continued to work for his employer, some 34 miles away. The trial court sustained the appeal and Commonwealth Court affirmed, stating, "[w]e certainly are not prepared to say that the prejudice which Rutkowski suffered was not sufficient, *as a matter of law,* to justify the lower court's action." *Id.* at 67, 406 A.2d at 249. (emphasis in original)

In our view, though the delay of five months and nine days is not inordinate, we must remember that Strohecker had been convicted of the underlying offense since November 5, 1986, and was not notified of the revocation until March 9, 1988. Though most of this delay is not chargeable to the department, the length of this time reflects favorably on the rea-

sonableness of Strohecker's belief that his license was unimpaired. Additionally, the length of the revocation—five years—is appropriately a factor to be considered in determining whether the delay is unreasonable. A five-year revocation is qualitatively distinct from the routine three, six or 12-month suspension. It is more than a temporary inconvenience. It amounts to an economic death sentence. To many, a loss of license is akin to a cowboy without a horse. It impacts on everything from where a person decides to live or work, to the type of employment they will pursue. Motorists, particularly youthful motorists like young Strohecker who are making career decisions, should be advised as soon as possible of such severe sanctions. And though we are loathe to interfere with departmental policy, we cannot ignore the consequences of this delay in the instant case. The department was in receipt of the certified conviction for over four months by the time Strohecker enrolled in truck driving school. He spent $4,000 on tuition and spent three months training to be a truck driver and is currently so employed. We find this prejudice even more compelling than that in *Rutkowski, supra,* and at least as compelling as that in *Hosek, supra.*

Accordingly, we enter the following

### ORDER

And now, September 12, 1988, petitioner's appeal is sustained.